## LOVE v. CHERRY.

1. Service: RESIDENCE: DOMICILE. A person may have several residences, though but one domicile. A person residing in M., in this with a married daughter, went, in 1860, to the State of Texas for the purpose of making a visit and transacting some business, with the intention of returning again to her home at M. The rebellion breaking out, it became difficult for her to return, and her business making it expedient, she took up her residence there for the special purpose of qualifying and securing her appointment as administratrix of the estate of a deceased relative. During this temporary residence in Texas, which continued until 1866, suits were commenced against her here, and service of the original notices therein made, by leaving copies of the same at the place where she

usually resided when at M. with her daughter. *Held*, that M. was to be deemed her usual place of residence in this State; that the facts were not inconsistent with the officer's return, that he had served the notices, by leaving copies thereof at her usual place of residence, and that sales of real estate belonging to her, made under judgments rendered on such service, were valid.

2. Judicial sale: OF LOTS EN MASSE: OFFICER'S RETURN. When an officer's return of an execution sale of two lots, states, that they were sold for a certain sum, but does not state whether separately or together, the presumption is, that the officer did his duty, and sold them separately.

3. —— WHEN AVAILABLE TO DEFEAT SALE. While the fact, that two lots were sold together, for a gross sum, might be made available to set aside a sale made to an execution plaintiff (*Boyd* v. *Ellis*, 11 Iowa, 97), it may well be questioned whether such an irregularity could, after the term of redemption has expired, and sheriff's deed executed and delivered, be made available to defeat the title of a third party.

## *Appeal from Henry District Court.*

### TUESDAY, APRIL 9.

·ACTION in equity to set aside a sheriff's sale and deed of certain real estate — lots 103 and 104 of McCabe's addition to Mount Pleasant. The facts are stated in the opinion. There was a judgment for the defendant in the District Court, dismissing the plaintiff's petition. The plaintiff appeals.

*Withrow & Wright* for the appellant.

*T. W. & John S. Woolson* for the appellee.

COLE, J. — The plaintiff, in 1859, executed one note for $63.33 individually, and another note jointly with her daughter L. A. Fowler for $31.89. Both these notes became the property of W. H. Kinney. In February, 1862, he brought suit upon each of the notes, before a justice of the peace in Henry county. Notices

1. SERVICE: residence: domicil.

were placed in the hands of a constable, and one was personally served upon the daughter, Mrs. Fowler, and both were returned served upon Julia J. Love, by leaving a copy at her usual place of residence, with Mr. Fowler, a member of her family over fourteen years of age, the said Julia J. Love, not being found, etc. No question is made as to the sufficiency of the return in form. Judgments were rendered by the justice, without appearance by the defendants, or either of them, in person or by attorney, for the amounts due upon the notes. Transcripts of these judgments were filed in the clerk's office of the District Court of Henry county, and executions were issued thereon, levied upon the lots in controversy, and they sold to James McLeran. Lot 104 only, was levied upon and sold under the larger execution, for $87.32, the whole amount due thereon; and lots 103 and 104 were both levied upon and sold under the smaller execution for the whole amount due thereon. The sales were made August 16, 1862, and certificates given to the purchaser.

The certificates of purchase were assigned to one Lapham, who assigned them to the defendant Cherry, who received a deed from the sheriff for the lots. Before Cherry procured the assignment of the certificates to him, he made an arrangement with Mrs. L. A. Fowler for the purchase of the lots, and agreed to pay therefor $875. He paid to Lapham the amount due upon the certificates of purchase, and paid the balance to Mrs. Fowler, and received his deed from the sheriff. The proof shows, that both notes were given by Mrs. Love at the request, and for the debts, of Mrs. Fowler. No question is made as to the form or regularity of any of the proceedings, except as herein after stated.

I. The plaintiff claims, that she had no usual place of residence in Iowa at the time of the pretended service of the notice, but was a non-resident of the State of Iowa,

and a resident of Texas, and that the return was false in fact, though regular in form.

The proof discloses substantially this state of facts, bearing upon this point. The plaintiff, Julia J. Love, had a brother residing at Mt. Pleasant, Iowa, and, for the purpose of living near him, she determined to remove from her then residence, in another State, to Mt. Pleasant, and make it her permanent home. She did remove there, in the summer of 1859, and was accompanied by her daughter Mrs. L. A. Fowler, and her husband, Mr. Fowler, and their children. After being in Mt. Pleasant some little time, the plaintiff purchased the property in controversy. Mr. Fowler and family moved into the house situated on one of the lots, and occupied the premises as tenant to Mrs. Love, she boarding with them, and having a room in the house to herself, which she furnished. Fowler was to board her while there, and take care of the property, and pay taxes on it, while she was absent, for the rent.

The parties were thus living for some time, and until about the first of November, 1860, when Mrs. Love left for the purpose of visiting a daughter in Florida, and another daughter in Texas, at which latter place she expected also to collect a sum of money due her from the estate of a deceased relative, and then she expected to return to Mt. Pleasant. Her furniture and some of her clothing were left with, and in charge of, her daughter, Mrs. Fowler, at the house on the premises in controversy.

On arriving in Texas, Mrs. Love found the estate from which she was to receive her money, yet unsettled, and she determined to remain until she could get the money coming to her. The State of Texas about that time passed a seceding ordinance, and, the rebellion soon breaking out, it became difficult, if not impossible, for her to return. In December, 1861, the administrator of the

estate of her deceased relative resigned and left the State, at which time she determined, as she testifies, to take up her residence there, and to secure her appointment, and qualify as administratrix of said estate, and secure thereby her claim. She had no communication with Mrs. Fowler or any one else north, after her arrival in Texas, as all communication was cut off shortly after she arrived there. She remained in Texas till 1866, when she came north, and now resides in Illinois. The original notice in the case before the justice of the peace was served on the 17th day of February, 1862, some six or eight weeks after she determined, as she testifies, to take up her residence in Texas. Mrs. Love testifies, that the first she knew of the sale of the lots or of the suits upon the notes was in October, 1865. Mrs. Love does not testify or intimate in any way, that she ever abandoned her purpose to return to Iowa to reside, as soon as the objects of her visit or trip to Texas were accomplished. But, on the contrary, she always expected, and still expects, to return to Mt. Pleasant to reside permanently.

Under the facts proved we do not find it necessary or proper to determine whether the title of a purchaser of real estate under execution upon a judgment regularly obtained, as shown by the papers and proceedings, can be affected or defeated by showing that the return of service upon the defendant in the judgment was *false*. In our view the whole testimony in this case, when fairly construed, fails to show that the return was false. We do not find it necessary to enter into a discussion at length of the meaning of the term "residence" or "domicil." The books are full of unsatisfactory definitions as well as confused and conflicting decisions in relation to those terms.

The plaintiff had not only a residence but a domicil at Mt. Pleasant, up to November, 1860. This is not con-

troverted. She then left for the purpose of making a visit or visits and transacting some business, and with the intention of returning in a convenient but uncertain time to her house at Mt. Pleasant. This *animus revertendi* was never relinquished or abandoned. Subsequent developments rendered it necessary for her to remain longer absent than she had expected. She testifies that she acquired a residence in Texas, and had to acquire such residence before she could be appointed administratrix and complete the transaction of her business. Very well; let it be conceded that she did acquire a residence in Texas for the purposes specified. The books are all agreed that a person may have several residences even, though but one domicil. She may therefore have had her residence in Texas and also in Mt. Pleasant. In the absence of clear and unmistakable evidence that she did not have a residence in Mt. Pleasant, the return itself must stand as evidence of the fact of her residence there. There is nothing in the evidence absolutely and necessarily inconsistent with the return. At all events there is no such weight of testimony against the return as would justify a court in holding it as false. There is no evidence in the case tending to show any fraud or bad faith on the part of any person connected with the recovery of the judgments or sales thereunder. Nor is it claimed, that, prior to the service and judgments, any intimation had been given directly or indirectly to any person in Iowa of the necessity or purpose of the plaintiff to acquire a residence in Texas, or that she contemplated a termination of her residence in Iowa. In view of all the facts, we have no hesitation in holding that the plaintiff has failed to show that the return was false. Bouvier's Law Dic. titles "Residence," "Domicil"; Story's Con. of Laws, § 39 to § 49; *Hinds* v. *Hinds,* 1 Iowa, 36, and

Vol. XXIV.—27

authorities cited; *Penley* v. *Waterhouse*, id. 498; *The State* v. *Minnick*, 15 id. 124.

II. It is claimed by the plaintiff that both lots were sold together, when they were capable of division and more advantageous sale thereby. There is no evidence as to this claim except the returns of the sheriff indorsed upon the executions. The execution upon the larger judgment was only levied upon lot 104, and of course only that lot was sold. The execution upon the smaller judgment was levied upon both lots, and the sheriff says in his return, that he sold the above described property at public auction to, etc., for $49.96. The presumption is that the officer did his duty, and the language of the return does not overcome this presumption and establish the fact that he did not. It is not stated whether they were sold separately or together.

*2. Judicial sale: of lots en masse: officer's return.*

Besides, it may well be questioned whether such an irregularity as the sale of two lots together could, after redemption expired and sheriff's deed is executed and delivered, be made available to defeat a title in a third party, which is otherwise regular. Such an irregularity may be made available to set aside a sale made to an execution plaintiff. *Boyd* v. *Ellis*, 11 Iowa, 97.

*3. —— when available to defeat sale.*

III. It is further claimed that the property was sold for a grossly inadequate price. The aggregate amount bid for both lots was $137.28. We have no proof as to their value at the time of the sale, August, 1862. It does appear, however, that the defendant purchased the property about one year, more or less, thereafter, and paid to the purchaser, at the sheriff's sale, or his assignee, just the amount bid by him and the interest thereon, and also paid to the plaintiff's daughter, who was also one of the judgment defendants, such further sum

as, with the amount paid the purchaser, made $875. Whether property had increased in value, or whether improvements had been made by the daughter since the sale, and for which the defendant paid her, is not shown. Whatever may be the rule where gross inadequacy of price is shown, we need not determine, since the proof in this case falls short of establishing a basis upon which to determine the question of inadequacy.

These are substantially all the points made by the appellant. The judgment must be

Affirmed.