Botna Valley State Bank, Appellee, v. Silver City Bank *et al.*, Appellants.

1. **Original Notice: SUBSTITUTED SERVICE: PRESUMPTION OF RESI- DENCE.** Where the head of a family left home for a day, with the expressed intention of returning, but failed to return, and it was never afterwards known where he was, *held*, that he did not thereby become a nonresident of the place of his late home, and an original notice served upon him there within nine days after his departure, by leaving a copy with his wife, was sufficient to give the court jurisdiction to render a personal judgment against him; the rule being that, where a residence is once acquired, it continues until there is an actual change of habitation with an intention to make a new residence.

2. **———: RESIDENCE OF DEFENDANT: ESTOPPEL.** Where land was sold to satisfy a judgment, whose validity depended upon the residence of the defendant at the time the original notice was served, the fact that before the land was sold a homestead was set off to the defendant's wife, did not estop the judgment plaintiff from claiming that the defendant was a resident of the county at the time of the service of the notice.

*Appeal from Mills District Court.*—Hon. A. B. Thor- nell, Judge.

Tuesday, January 31, 1893.

This is an action in equity to quiet the title of the plaintiff to certain real estate in Mills county. There was a decree for the plaintiff, and the defendants appeal.—*Affirmed.*

*John Y. Stone, W. S. Lewis, L. T. Genung* and *Geo. W. Hewitt,* for appellants.

*P. P. Kelley* and *E. B. Woodruff,* for appellee.

Rothrock, J.—I.   The facts upon which this controversy is founded are as follows:   For about thirty years prior to the thirteenth day of September, 1889, B. E. F. Kelly was a citizen of Mills county, in this state.   For all that time he resided on a large farm, about six miles north of Hastings.   He owned the farm and all the live stock and farming implements necessary to carry on his business.   He was in debt for a considerable amount, but it does not appear that any of his property was mortgaged.   He had a wife and family of grown up children, and there is nothing in the record showing that he was disturbed in his mind, or had any family trouble.   On the evening of the thirteenth day of September, 1889, one of his sons drove him to Hastings, that he might take an early train on the next morning to go to Glenwood, to attend a county convention.   He remained during the night at Hastings, and in the morning took the train going west to Glenwood.   There were other parties on the train who were going to the convention.   When they arrived at Glenwood, some left the train, but, as it was early in the morning, they returned and went on to Council Bluffs, took breakfast, and came back on another train to Glenwood.   Kelly did not leave his seat in the car in the morning, when the train reached Glenwood.   He went on with the other parties, and announced his purpose to return to the convention. The whole party left the depot at Council Bluffs, and went to a hotel for breakfast, except Kelly and one other.   They stopped on the way up town and took their breakfast at another place.   After breakfast, while Kelly was reading a newspaper, the one who was with him left the place.   Kelly did not return to the convention.   The convention was held on Saturday, September 14.   On Sunday evening, Kelly was seen on the train going east towards Hastings.   The

<div style="margin-left:2em; font-size:smaller">1. Original notice: substituted service: presumption of residence.</div>

last that was seen of him was at Glenwood. This cause was tried in the court below in May, 1891, and up to that time there was no reliable evidence that Kelly had been seen by anyone after Sunday evening, September 15, 1889.

On the twenty-fourth day of September, 1889, the Botna Valley Bank, plaintiff herein, commenced an action against Kelly for debts which he owed the bank, and on the same day an original notice was served on him by the sheriff of Mills county, the return of which is as follows: "And on the twenty-fourth day of September, 1889, I served the same on B. E. F. Kelly, he not being by me found in the county of his residence, by leaving at his house and usual place of residence, in Anderson township, Mills county, Iowa, a true copy thereof, with Mrs. B. E. F. Kelly, a member of said B. E. F. Kelly's family, over fourteen years old.            W. C. DE LASHMUTT,
                                                "Sheriff."

Judgment by default was entered against Kelly, execution was issued, and part of the farm sold thereon to the plaintiff in this action, and in due time a sheriff's deed was made to the bank, pursuant to the sale. After the judgment was entered, and the farm sold, the defendant Silver City Bank obtained a judgment by default against Kelly, founded upon notice by publication and an attachment of the land. It is claimed that this judgment is a cloud upon the plaintiff's title, and that it should be removed by a proper decree.

The defendants claimed that, at the time the original notice in the plaintiff's action was served, Kelly was a nonresident of this state, and that the substituted service, by leaving a copy with his wife, was a mere nullity, and that the court acquired no jurisdiction of the person of Kelly by that service. This is the only question in the case. It will be observed that

the notice was served on the twenty-fourth day of September, and Kelly was last seen on the evening of the fifteenth of that month. There is no evidence that Kelly has at any time been seen out of the state, nor that he had any motive for absconding, so that process could not be served on him in this state. All of his acts up until the last time he was seen indicate that it was his purpose to return to the farm, and remain with his family. He had been making preparations for the wintering of his stock. He told his wife when he left home, on the thirteenth of September, that he was going to Glenwood to the convention, and would return the next day; and she had no reason to suspect that he had any other intention.

The law is well settled that, where a residence is once established, it continues until there is an actual change of habitation, with an intention to make a new residence. When a residence is once acquired, it is presumed to continue until there is satisfactory evidence that it has been abandoned. *Hinds v. Hinds*, 1 Iowa, 36; *Nugent v. Bates*, 51 Iowa, 77; *Cohen v. Daniels*, 25 Iowa, 88; *State v. Groome*, 10 Iowa, 308; *Love v. Cherry*, 24 Iowa, 204; *Vanderpoel v. O'Hanlon*, 53 Iowa, 246; *Fry's Election Case*, 71 Pa. St. 302. The burden was upon the defendants to rebut the presumption that Kelly's residence was on his farm. There is no evidence that nine days after he was last seen, when the service was made, he had taken up his residence elsewhere. We are asked to presume that he had done so. No such a presumption can be indulged. To do so would rebut one presumption by another. The fact of Kelly's presence in another place must be shown by evidence, and not by presumption. To say the least, no such presumption should obtain by an absence of nine days.

II. It appears that, before the land was sold, a homestead was set off to the wife of Kelly. It is

2. ——: residence of defendant: estoppel.
claimed that, as the homestead was not set off to Kelly, the plaintiff is estopped from claiming that he was a resident of Mills county, where the original notice was served. There is no element of estoppel in this act. It does not appear that the defendants relied on the setting off of the homestead to the wife, and that they acted thereon to their prejudice; and the defendants can not raise the question of estoppel, because it has not been pleaded. AFFIRMED.