## DES MOINES SAVINGS BANK v. MICHAEL KENNEDY, Appellant.

**Limitation of actions:** EVIDENCE OF NONRESIDENCE. A patent to government homestead land in a foreign state, issued to defendant in a suit on a promissory note during the period relied upon to establish a limitation of the action, is admissible as evidence of nonresidence to obviate the plea of the statute; and the production of the same by defendant in response to an order of court requiring him to produce a patent is an admission that it is the one called for in the order, and it is receivable in evidence without further proof of identification.

**Evidence:** IDENTITY OF PARTY. Ordinarily in a civil action identity of names is *prima facie* evidence of identity of persons.

**Same:** CERTIFIED COPIES: ADMISSIBILITY. Where defendant in a suit on a promissory note produced in response to an order of court a patent issued to · him conveying homestead land in a foreign State, certified copies of the application and affidavit for the entry of the identical land as a homestead, and of the sworn proof that a person of the same name had complied with the law as to residence thereon and was entitled to a patent were admissible to show his nonresidence, over the objection that there was an insufficient identity of defendant as the same party who made the entry and proof of residence.

**Limitation of actions:** NONRESIDENCE: EVIDENCE. Evidence that a resident of this State entered a government homestead in a

foreign State, to whom patent issued upon proof that he had complied with the law as to residence upon the land for the term of five years, authorized a finding that he was a resident of that State for such time, and its exclusion in computing the period of limitation pleaded in defense to a suit on his note.

**Same:** INSTRUCTIONS: DEFINITION OF TERMS. Where the question was whether defendant had established an actual residence on a government homestead in a foreign State, and had lived there sufficient time to toll the statute of limitations pleaded in defense to a suit on his promissory note, failure of the court to define the words "resident" and "nonresident" was not erroneous, in the absence of a request therefor.

**Same:** NONRESIDENCE. Where the evidence for plaintiff tended to show that defendant had been an actual resident of another State during a part of the time relied upon as constituting the period of limitation, an instruction that if he had established and maintained a residence in the foreign State he was for such time as he resided there a nonresident of this State was proper.

**Original notice:** SUBSTITUTED SERVICE. Under the statute service of original notice must be made in the county of defendants actual residence, and to justify service in his absence by leaving a copy with a member of the family it must appear that he was an actual resident of the county at that time.

**Pledges:** APPLICATION OF PROCEEDS OF PLEDGED PROPERTY. The pledgee of property can not hold the same for other debts or apply the proceeds to any other purpose than that contemplated in the contract of pledge, except by consent of the debtor; thus where a debtor conveyed land and also assigned a policy of life insurance to secure certain existing indebtedness, but there was no showing that it was contemplated the creditor should assume or pay premiums on the policy, the proceeds of the sale of the land could not be applied to repayment of premiums paid by the creditor, but the entire proceeds thereof should have been applied on the existing indebtedness. The creditor, however, was entitled to be reimbursed for premiums advanced out of the proceeds of the policy.

Evans, C. J., and McClain, J., dissenting.

*Appeal from Polk District Court.—*Hon. JESSE A. MILLER, Judge.

SATURDAY, APRIL 10, 1909.

ACTION to recover amount alleged to be due on three promissory notes resulted in judgment as prayed. Thereafter defendant died, and Casper Schenk was appointed administrator of the estate on the petition of plaintiff. As he was a member of the firm of Schenk & Berryhill, who represented plaintiff in the action, Robert O. Brennen, Esq., was appointed by the court to prosecute this appeal in behalf of the administrator.—*Modified* and *affirmed.*

*Robert O. Brennen* and *Dunshee & Haines,* for appellant.

*Schenk & Berryhill,* for appellee.

LADD, J.—Upon the introduction of all of the evidence, the court withdrew all the issues from the jury save that of the plea of the statute of limitations. One of

1. LIMITATION OF ACTIONS: evidence of nonresidence.

the notes became due March 19, 1896, another March 20, 1896, and the third December 7, 1896. Suit was begun January 26, 1907, so that the suit was barred by the statute declaring that actions on written contracts shall be brought within ten years after the causes thereon accrue (section 3447, Code), unless since then the maker had been a nonresident of the State for a time longer than the period between the expiration of the ten years and the commencement of the action, section 3451 of the Code, providing that the time during which a defendant is "a nonresident of the State shall not be included in computing any of the periods of limitation above prescribed." To establish nonresidence plaintiff introduced in evidence a patent to one hundred and sixty acres of land in Faulk County, S. D., from the government to Michael Kennedy, bearing date January 8, 1904, and reciting that it was issued pursuant to the act of Congress securing homesteads to actual settlers

on the public domain and upon proof of compliance with said law by the grantee. In offering the patent in evidence, counsel for plaintiff stated that it was the "one which was produced by this defendant in response to an order of the court on the 27th day of April, 1907." An objection as incompetent, irrelevant, and immaterial was overruled, and rightly so. On the order of the court that a "patent issued to defendant" such as described be filed with the clerk of the court, a patent was filed. The attorney offered the patent in evidence as the one so filed. It was subject to the inspection of counsel for defendant, and, if there was any doubt as to its identity, the attention of the court should have been directed thereto. This was not done and, as the attorney is presumed to have acted in good faith in the trial, the instrument will be assumed to be that produced in response to the order. The production of the patent in response to the order of the court was a solemn admission that it was that which the order called for, namely, a patent from the government to the defendant. As it was the original instrument, section 4633, Code Supp. 1907, is not applicable. Authorities cited concerning the necessity of identifying a document before it may be received in evidence are sound, but such identification may be by admission of the adverse party as in this case, and this is quite as conclusive as when by other evidence. Such admission obviated any question as to identification by name, though this might, in the absence of any showing to the contrary, alone prove sufficient in a civil action.

II. Certified copies of an application and affidavit for this identical land as a homestead, filed in the United States land office at Huron, S. D., and of the sworn proof that Michael Kennedy had so complied with the act of Congress as to be entitled to a patent therefor, made by two witnesses and defendant, were also introduced in evidence. These were

2. EVIDENCE: identity of party.

equally as credible as the original papers. Section 4635, Code. Both the witnesses and the defendant therein testified that the latter settled on the land and established actual residence thereon August 15, 1898, had resided continuously thereon from that time until August 29, 1903, the date of the affidavits, and that in the meantime he had never been absent therefrom. The objection interposed to this evidence is that there was no showing that defendant was the person who made such proof. Ordinarily a person is identified by his name. It is the designation by which he is known, and in civil actions identity of name is *prima facie* evidence of identity of person. See cases collected in dissenting opinion in *State v. Smith,* 129 Iowa, 709; *Snyder v. Fidler,* 125 Iowa, 378.

Of course, different persons may bear the same name, and whether, under the circumstances shown, a person was the particular party designated, may be for the jury to determine; but in this case the issuance of

3. SAME: certified copies: admissibility.

the patent to defendant for the identical tract of land, the proof that he was in South Dakota much of his time during five years involved, that he had made proof of his homestead claim before the county clerk of like name with witnesses bearing the names of those mentioned in the affidavits, that he was on a claim, and his explanation how the affidavits were prepared, and that "the homestead law as understood in that neighborhood did not require the homesteader to remain on the claim at all times," left no doubt as to defendant being the person named in the several papers.

III. From the evidence above referred to the jury might have found that defendant had been an actual resident of South Dakota for a period of five years, for to

4. LIMITATION OF ACTIONS: nonresidence: evidence.

have acquired the patent he must have resided upon and cultivated the land for that period. Section 2291, 6 Fed. St. Ann. (U. S. Comp. St. 1901, p. 1390). Indeed, the only avenue

of escape from this conclusion was in finding that in procuring the patent he had perpetrated a fraud on the government of the United States. Such was not the necessary deduction from the evidence adduced, and therefore the court rightly overruled defendant's motion for a directed verdict.

IV. The court did not define the words "nonresident" or "resident" in its charge, and complaint is made of this omission. No instruction was asked, and under the peculiar facts of this case the omission to define these words, in the absence of such request, was not error. The only issue was whether defendant had established an actual residence on the homestead claim in South Dakota and lived thereon long enough to toll the statute of limitations for the required time. In no other way did plaintiff undertake to prove nonresidence of this State. Had he been a resident of South Dakota, as he represented in order to acquire the land under the patent, or a resident of this State, as he undertook to prove in order to defeat the collection of these notes? Any definitions the court might have given could not have elucidated this issue. What has been said sufficiently indicates our approval of the instruction to the effect that a strong presumption arose that during the time defendant was acquiring his homestead he was a resident of South Dakota, and therefore a nonresident of this State.

*5. SAME: instructions: definition of terms.*

V. The court told the jury that, if "defendant established and maintained a residence in the State of South Dakota, you are instructed that for the purposes of this case during such time as he was a resident of South Dakota he was a nonresident of the State of Iowa." Undoubtedly a person's residence in another state might be of a temporary nature, and such as not to constitute him a nonresident; but the only evidence adduced by plaintiff tended to show that defend-

*6. SAME: non residence.*

ant was an actual resident of South Dakota, so that, if he established a residence there at all, it was an actual residence, and there was no error in this instruction.

It is argued that the evidence was such as to indicate that service of an original notice of an action might have been had on defendant at any time in his absence from

7. ORIGINAL NO-
TICE: substi-
tuted service.

Polk County by leaving a copy at his usual place of residence in Des Moines. He was a widower without family and when in Des Moines, after the spring of 1899, stopped with a sister, had a room in her house, which he occupied with her son, and in which he left his effects when away and was treated as a member of the family. The evidence tended to show that he was in Des Moines six or seven months of the year, but, to justify service of notice in his absence from the county or State by leaving a copy with a member of the family, he must have been an actual resident at the time. *Schlawig v. De Peyster,* 83 Iowa, 323; *Fitzgerald v. Arel,* 63 Iowa, 105. See *Love v. Cherry,* 24 Iowa, 204; *Mann v. Taylor,* 78 Iowa, 355. The statute exacts service on residents of the State in the counties of their actual residence. Section 3501, Code; *Savage v. Scott,* 45 Iowa, 130; *Ludlow v. Szold,* 90 Iowa, 175; *Cohen v. Daniels,* 25 Iowa, 88. If his actual residence was in South Dakota when there, as he represented to the government, it could not have been at Des Moines at the same time. Surely, in view of the evidence, the jury might well have concluded that he was a nonresident of this State, notwithstanding he passed considerable of his time in it with relatives.

VI. It is asserted, however, that proper credits were not allowed on the notes sued on. The defendant con-

8. PLEDGES: ap-
plication of
proceeds of
pledged prop-
erty.

veyed one hundred and sixty acres of land to the bank November 25, 1895. At that time his only indebtedness to it was that evidenced by these notes. This land was sold and $4,100 realized therefrom January 4, 1899. Of

this sum but $935 was indorsed on one of the notes. The remaining $3,165 was used in paying the premiums on a policy of insurance on defendant's life for 1896 and the two years following. This policy had been issued December 13, 1893, assigned to the bank in 1895, and to continue it in force the payment of an annual premium of $1,055 for seven years more was required. The indemnity to be paid on the death of insured was $10,000, In addition to the above amount, the bank advanced premiums for the four years subsequent to 1898, amounting, with interest, on December 20, 1903, to $5,058.85, and on that day received upon the surrender of the policy $6,422.-60. This left a surplus over the four payments of $1,365.-75, which was indorsed on one of the notes. So that the carrying of this policy involved a loss of the three premiums first paid with interest as provided in the notes from January 4, 1899, to December 20, 1903, less the surplus of $1,363.75 realized from the policy above the cost of the last four premiums, with interest, on something over $1,800. Appellant contends that the court erred in not crediting the entire proceeds of the land on the notes on the day these were received by the bank, and in approving their appropriation to the payment of the premiums on the insurance policy. This necessarily depends on the arrangement between the parties. With reference to the conveyance of the land, the defendant testified that "the object of the deeding was to protect the bank for any indebtedness I owed them at the time." The cashier of the bank disclaimed personal recollection of the transaction, but to the inquiry whether "the deed was taken to increase the security of the bank, to make the bank more secure for any indebtedness that existed between Mr. Kennedy and the bank," answered: "I should judge that might be the interpretation of that, sir, I have no doubt of that." This was all the evidence bearing thereon, and no exception can well be taken if the testimony of the one and the con-

struction of the other that the conveyance was to secure an existing indebtedness be accepted. This being so, the proceeds of the sale of the land could not be applied otherwise by the bank than on such indebtedness save by the consent of the pledgor, and no claim is made that this was given. This is elementary and exacts no more of the bank than that it bide the agreement under which the security had been received. *Anderson v. Simms* (Tex.) (4 S. W. 471); *First Nat. Bank of Milwaukee v. Finck,* 100 Wis. 446 (76 N. W. 608.); *Phillips v. Thompson,* 2 Johns. Ch. (N. Y.) 418 (7 Am. Dec. 535); 22 Am. & Eng. Ency. of Law (2d Ed.) 869, and cases collected in note. The consensus of judicial opinion is thus stated in the last-mentioned work: "The pledgee has no right to hold property for any other debts than that for which it was pledged, and the proceeds of the property can not be applied to any debts other than that which was contemplated in the contract of pledge." Chancellor Kent's statement of the rule in his commentaries is pertinent: "The pawnee will not be allowed to retain the pledge of any other debt than that for which it was made even though the holder is a banker." 2 Kent's Comm. 775; Morse on Banking, 36; *Duncan v. Brennan,* 83 N. Y., 487, where it was said that "the general lien which bankers have on bills, notes and other securities deposited with them for a balance due on general account can not exist where the pledge of property is for a specific sum and not a general pledge." And see *Masonic Savings Bank v. Bank's Adm'r,* 84 Ky. 135, 4 Am. St. Rep. 197, and note, in which the decisions are collected.

So that the bank was without authority to make use of the proceeds of the land for the payment of any other indebtedness than that to secure which the land was conveyed. Even though the insurance policy was assigned to the bank at about the same time, it had incurred no expense thereon. Nor had it obligated itself to do so. The

cashier of plaintiff testified that: "The arrangement or agreement was with respect to the policy, that we could do as we pleased with it. If we desired to continue it in force, we could do it; if we did not, we could cancel it and collect any value attached to it. The policy was assigned to us to protect us from any pecuniary interest we might have in Mr. Kennedy." And according to Kennedy the bank could cash the policy on his death or at the end of ten years. There is no evidence that the bank had thereby assumed or elected to pay the premiums on the policy, and therefore no indebtedness could have existed because of the policy at the time of the conveyance of the land; but the bank was entitled to be paid all the premiums advanced out of the proceeds of the insurance policy. *McQuillan v. Mutual Reserve Fund Life Ass'n*, 112 Wis. 665 (87 N. W. 1069, 88 N. W. 925, 56 L. R. A. 233, 88 Am. St. 986); *Morris v. Georgia Loan, etc., Co.*, 109 Ga. 12 (34 S. E. 378, 46 L. R. A. 506); 25 Cyc. 774, and cases collected in note; Denis on Contracts of Pledge, section 274; Colebrooke on Collateral Securities, section 426. The plaintiff then was entitled to retain the $1,363.-75 credited on the note December 20, 1903, and apply the same on the advances made by it in payment of the first three premiums; but it should have given the defendant credit for the entire proceeds of the farm at the time received on the indebtedness existing when the land was conveyed to it. The plaintiff may remit the sum in excess of that for which the judgment should have been rendered within thirty days from the filing of this opinion, or, upon its failure so to do, the judgment will be reversed.

The judgment, as so modified. will be *affirmed.*

EVANS, C. J. (dissenting). I think the trial court properly allowed the application of credits to stand as made by the bank, and that its judgment ought to be

affirmed without modification. The insurance policy in question and the deed of the land were both taken as security for the same debt. The payment of premiums on the policy was a necessary expense for the maintenance of the security, and was clearly within the contemplation of the parties. Such payment inured primarily to the benefit of the defendant. The liability of the defendant to the bank for such payment arose out of the original contract, and was not a new debt in the sense indicated in the majority opinion. To my mind the principle laid down in the majority opinion as its guide in the application of the proceeds of the land is not applicable, and the cited authorities are therefore beside the point. Without any dispute, the defendant got the full benefit of all the proceeds of the farm and of the insurance policy. This result of the majority opinion is to give him a duplication of credit for the proceeds of the farm. Such a result ought not to be attained by a straining of legal rules. On the contrary, doubts ought to be solved in favor of an equitable result.

McCLAIN, J., joins in this dissent.