RAY DICKERSON, Petitioner, v. HUBERT UTTERBACK, Judge, Respondent.

**ORIGINAL NOTICE: Substituted Service—Presumption.** A return of service of an original notice which reveals service on defendant by service on a proper member of his family is presumed correct, and judgment rendered thereon is valid though defendant never learned of the notice. Evidence held insufficient to overcome said presumption. (See Book of Anno., Vol. 1, Sec. 11061, Anno. 53 *et seq.*)

Headnote 1:   34 C. J. p. 537; 32 Cyc. pp. 513, 517.

Headnote 1:   20 R. C. L. 356.

*Certiorari to Polk District Court.*—HUBERT UTTERBACK, Judge.

MARCH 16, 1926.

REHEARING DENIED SEPTEMBER 24, 1926.

Certiorari on conviction for contempt of a liquor injunction.
—*Affirmed.*

*Hyman E. Miller,* for petitioner.

*Vernon R. Seeburger,* County Attorney, and *Russell Jordan,*
Assistant County Attorney, for respondent.

MORLING, J.—On June 4, 1925, final decree was entered en-
joining plaintiff and his wife from maintaining a liquor nuisance
and from selling or keeping for sale intoxicating liquors. The
proceedings in contempt before us were instituted for the viola-
tion of that injunction. The body or substance of the original
notice in the injunction proceeding is not in the record here. No
question as to the sufficiency of the body of the original notice
nor of the return of service, in substance or form, as one of sub-
stituted service, is made. The return shows service at plaintiff's
usual place of residence, by leaving copy with Mrs. Ray Dicker-
son, a member of the family, etc. The objection to the injunctive
decree asserted at this point is that the place of service was not
in fact petitioner's place of residence, and petitioner's wife was
not in fact a member of his family, because he had separated
from her; and that, therefore, there was no service in fact and
no jurisdiction to grant the injunction. It is also claimed that
petitioner did not have actual knowledge of the injunction.

On the face of the record, the court did have jurisdiction,
and the decree is valid, whether petitioner knew of the original
notice or not. *Hass v. Leverton,* 128 Iowa 79; *Wells v. Wells,*
279 Mo. 57 (213 S. W. 830); *Cooper v. Fourth Nat. Bank,* 26
Ga. App. 44 (105 S. E. 375); *Carroll v. Muller,* 31 Ga. App. 209
(120 S. E. 548). The petitioner seems to think that the burden
is on the State to prove the existence of jurisdiction in rendering
a judgment on substituted service, though shown by a return
fair and regular on its face. This is not correct. The presump-
tion is in favor of the regularity and validity of the judgment
and of the proceedings on which it was based, and not in favor
of the defendant, who has violated it.

The question of fact is whether the place of service was the

petitioner's usual place of residence, and whether his wife was a member of his family. The petitioner has produced no testimony but his own, which, on direct examination, was:

"Mr. Dickerson, were you served with an original notice on the 17th day of April, 1925, notifying you that there was an injunction suit pending in the district court of Polk County, Iowa, against you? A. Not as I remember. Q. Mr. Dickerson, were you living with your wife on the 17th day of April, 1925, in Des Moines, Polk County, Iowa? A. No, sir, we had had trouble. Q. Mr. Dickerson, were you ever served with a decree,—with an order of court,—saying that there was an injunction against you? A. I couldn't say as to that. Q. I call your attention to the decree which has been offered in evidence by the plaintiff, and ask you if a copy of that decree was ever served upon you? A. Not to my knowledge, that was not served on me. Q. Mr. Dickerson, did you know that there was an injunction suit pending against you in the district court? A. I did not. Q. Injunction Docket 21—or Docket 1, Case 28? A. Not as I know of."

On cross-examination, he testified that he was never divorced.

"We had trouble; we didn't live together. Q. Where did you live, then, in April? A. Well, she had rented the place here; she told me she was going to get out, and I told her, 'All right;' told her I would take care of her and the kids and give her money every week. Q. Where did she live at? A. She had moved from 817 up to the Normandy Apartments."

He says he had nothing to do with the renting of those apartments.

"Q. Where were you living up there at the time? A. I was up there off and on,—yes, sir."

He says his children were there and his wife was there.

"Q. And that was in April, 1925? [The service was April 17, 1925.] A. Yes, sir; when the law was up there, I happened to come in. We had been out riding, and I brought her back some ice cream. She wanted a quart of ice cream. Q. And then the police came in, and you were arrested? A. They were there when I came in. Q. And took you down to the station? A. Yes, sir. Q. Didn't they serve you with a notice right then and there? A. Notice of what? Q. Notice of the injunction suit?

A. No, sir. ·Q. Well, while they were taking you down to the station, or after they got you there? A. Oh, what do you mean? Q. Well, during the time—from the time that they arrested you there, in April, 1925,—took you down to the station, and while you were there at the station,—didn't they serve you with a notice of some kind? A. I don't know. Q. You don't know of any? A. No, sir. Q. Didn't they give you any papers at all? A. Not as I know of.''

It will be noted that he was expressly asked where he lived, and that he in answer made reference to the apartments which his wife had rented. He was again asked whether he was living there at the time, and answered that he was there off and on; that his wife and children were living there, and ''when the law was up there, I happened to come in,'' and he was taken to the station; that he evades and equivocates as to whether he was served with notice, and does not give any place of residence other than that of his wife and family. The appearance docket shows personal service, but the deputy clerk, after finding the original notice, which had been mislaid, thought that such record was not correct.

The place of residence of petitioner's family is presumed to be his domicile. *Nugent v. Bates,* 51 Iowa 77; *Botna Valley St. Bank v. Silver City Bank,* 87 Iowa 479. The officer's return is strong evidence of its correctness, and is not overcome by such testimony as that offered by petitioner. *Galvin v. Dailey,* 109 Iowa 332. It would be a travesty on the administration of justice to accept petitioner's testimony as sufficient to overcome the solemn decree of the court. The petitioner was fined $500, committed to jail for six months, and in lieu of payment of fine and costs, committed to jail for a period not exceeding one day for each three and one-third dollars, in addition to the six months. We think that the court was authorized to find that the petitioner was fully informed of the pendency and result of the injunction proceedings, and that petitioner was in willful contempt. The punishment is not excessive. The other questions raised have been ruled against petitioner's contention. *Touch v. Bonner,* 201 Iowa 466; *Labozetta v. District Court,* 200 Iowa

1339; *State ex rel. Robbins v. Anderson* (Iowa), 207 N. W. 137 (not officially reported).

The writ is discharged, and the judgment—*Affirmed.*

DE GRAFF, C. J., and EVANS and ALBERT, JJ., concur.