RUTH & CLARK, INC., Appellee, v. KENT EMERY et al., Appellees; ROBERT J. FITZ, Appellant.

No. 46314.

OCTOBER 19, 1943.

Frank W. Davis and Davis, McLaughlin & Hise, all of Des Moines, for appellant.

Emmert, James, Needham & Lindgren, Ralph N. Lynch, Strock, Woods & Dyer, George A. Kern, Holliday & Myers, David W. Fletcher, Fey H. Moody, and Hallagan, Fountain, Steward & Cless, all of Des Moines, for appellees.

MILLER, J.—Plaintiff's petition seeks foreclosure of mechanic's liens and a personal judgment in the sum of $695 against the defendant Fitz. The sheriff's return recited that the

original notice was served upon Fitz on October 22, 1942, by leaving a copy thereof with his wife at "his usual place of residence * * * said Robert Fitz not found in Polk County, Iowa, after diligent search." Fitz filed a special appearance which asserted that the notice was left with his wife at her usual place of residence, which had not been his usual place of residence since June 26, 1942, when he was inducted into the armed forces; since then he has continually resided in army camps, posts, or stations and, at the time service was made, was stationed at Jefferson Barracks, Missouri, which was then his place of residence. The special appearance was supported by affidavit of counsel to the effect that Fitz was inducted into the Army on June 26, 1942, has been continuously in such service and, when the original notice was served, was stationed at Jefferson Barracks, Missouri, and since his induction has not been a resident of Polk County, Iowa. The special appearance was overruled. Fitz appeals to this court.

The question presented depends upon an interpretation of paragraph 2 of section 11060, Code, 1939, which provides that an original notice "shall be served as follows: * * * 2. If [defendant] not found within the county of his residence * * * by leaving a copy thereof at his usual place of residence with some member of his family over fourteen years of age * * *." This in turn depends upon an interpretation of the terms "county of his residence" and "his usual place of residence."

Under the facts asserted herein the domicile of defendant remained in Polk county. Harris v. Harris, 205 Iowa 108, 215 N. W. 661. Defendant concedes as much. Counsel state:

"That defendant appellant's domicile remained in Polk County is not disputed, but his usual place of dwelling was not Polk County and had ceased to be Polk County from and after the time of his induction into the Army of the United States, and became that camp, post or station of the United States Army to which he was assigned from time to time. Accordingly, even though his domicile remained in Polk County, such fact did not make defendant appellant's 'usual place of residence' Polk County after he had become a member of the armed forces."

In further elaboration, defendant concedes that Polk county is the county of his legal residence, but contends that the word "residence" used in the phrase "his usual place of residence" refers to his "actual" residence as distinguished from his legal residence or domicile. Defendant relies upon language used by us in the cases of Fitzgerald v. Arel, 63 Iowa 104, 16 N. W. 712, 18 N. W. 713, 50 Am. Rep. 733; Schlawig v. De Peyster, 83 Iowa 323, 49 N. W. 843, 13 L. R. A. 785, 32 Am. St. Rep. 308; and Des Moines Sav. Bk. v. Kennedy, 142 Iowa 272, 120 N. W. 742. Plaintiff in turn relies upon Love v. Cherry, 24 Iowa 204; Nugent v. Bates, 51 Iowa 77, 50 N. W. 76, 33 Am. Rep. 117; Bradley v. Fraser, 54 Iowa 289, 6 N. W. 293; Botna Valley State Bk. v. Silver City Bk., 87 Iowa 479, 54 N. W. 472; and Dickerson v. Utterback, 202 Iowa 255, 207 N. W. 752. While none of the cases precisely so holds, the effect of our prior decisions seems to be that "county of his residence" herein means county of legal residence or domicile and "usual place of residence" is limited to such county.

We are here dealing with a statute which, for the purposes of this case, has appeared in the Codes from that of 1851 to that of 1939 without material change. Section 1721, Code, 1851, provides for substituted service as follows:

"If not found he may be served by a copy left at his usual place of residence with some member of the family more than fourteen years of age."

Paragraph 2 of section 2816, Revision of 1860, provides:

"If not found within the county of his residence, by leaving a copy of the notice at his usual place of residence, with some member of the family over fourteen years of age."

Paragraph 2 of section 2603, Code, 1873, is identical with the paragraph just quoted from the Revision of 1860. Paragraph 2 of section 3518, Code, 1897, is also identical therewith except that for the words, "copy of the notice," there is substituted, "copy thereof." Paragraph 2 of section 11060, Code, 1939, is more elaborate than previous statutes, but, for the purposes of this case, contains the identical words which appear in the Code of 1897. Accordingly, those cases which construe the

foregoing statutes would appear to be clearly applicable to the statute now before us. We will undertake to review the cases cited by counsel herein.

In Love v. Cherry, supra, 24 Iowa 204, 208, 209, where substituted service was made at Mt. Pleasant, Iowa, while the defendant was in Texas and claimed to be a resident of Texas, this court sustained the service as valid, stating as follows:

"The plaintiff had not only a residence but a domicil at Mt. Pleasant, up to November, 1860. This is not controverted. She then left for the purpose of making a visit or visits and transacting some business, and with the intention of returning in a convenient but uncertain time to her house at Mt. Pleasant. This *animus revertendi* was never relinquished or abandoned. Subsequent developments rendered it necessary for her to remain longer absent than she had expected. She testifies that she acquired a residence in Texas, and had to acquire such residence before she could be appointed administratrix and complete the transaction of her business. Very well; let it be conceded that she did acquire a residence in Texas for the purposes specified. The books are all agreed that a person may have several residences even, though but one domicil. She may therefore have had her residence in Texas and also in Mt. Pleasant. In the absence of clear and unmistakable evidence that she did not have a residence in Mt. Pleasant, the return itself must stand as evidence of the fact of her residence there."

Nugent v. Bates, supra, 51 Iowa 77, 50 N. W. 76, 33 Am. Rep. 117, involved the question of domicile only for the purpose of assessing personal taxes.

Bradley v. Fraser, supra, 54 Iowa 289, 291, 6 N. W. 293, 294, involved a statute relating to jurisdiction of a justice of the peace. Defendant was personally served in Clayton county. The notice was returnable before a justice of the peace of that county. In holding that the justice had no jurisdiction, we state:

"Day, J.—Section 3507 of the Code provides: 'The jurisdiction of justices of the peace, when not specially restricted, is co-extensive with their respective counties, but does not embrace suits for the recovery of money against *actual residents* of any

other county.' [Italics supplied.] * * * On the 1st day of June, 1878, Bach was a resident of Buchanan county. Did he, because of the existence of the facts found by the court, cease to be an actual resident of that county? He went to Clayton county, with his family, to build a school-house under a contract, intending to return as soon as the job was finished, and during the time he was in Clayton county he held this intention and regarded Buchanan county as his residence and home, and his stay in McGregor as temporary. Under these circumstances, he continued, in the most enlarged sense of the term, a resident of Buchanan county. * * * Bach, notwithstanding his temporary stay in Clayton county, continued to be an actual resident of Buchanan county. Under section 3507 of the Code, the jurisdiction of a justice of the peace of Clayton county did not extend to him.''

Fitzgerald v. Arel, supra, 63 Iowa 104, 16 N. W. 712, 18 N. W. 713, 50 Am. Rep. 733, upon which defendant places great reliance, involved an interpretation of the same statute as did Bradley v. Fraser, supra. This court undertook to distinguish both Love v. Cherry, supra, and Bradley v. Fraser, supra, without apparently recognizing that Love v. Cherry involved a different statute. Defendant herein places great stress upon the fact that this court emphasizes the necessity of *actual* residence. But, as shown in the quotation from Bradley v. Fraser, supra, the statute relative to jurisdiction of a justice of the peace depended upon actual residence, whereas that term has never been incorporated in the statute relating to substituted service.

In Schlawig v. De Peyster, supra, 83 Iowa 323, 325, 326, 49 N. W. 843, 13 L. R. A. 785, 32 Am. St. Rep. 308, in holding that substituted service on a member of defendant's family at Sioux City, Iowa, did not confer jurisdiction, we state:

''The record very satisfactorily shows that about eighteen months before the service of the notice the defendant, who then lived with his family in Sioux City, went to the Black Hills, intending to make his home there. He left his family consisting of a wife and children, in Sioux City, intending to remove them to the Black Hills as soon as he could do so. He engaged

in mining and other business in the Black Hills, and built a house, shop and other buildings there. He voted at the elections and sat upon juries and discharged other duties of a citizen, but did not remove his family there, though continually intending so to do. He visited his family about two years after he went to the Black Hills, and repeated the visit at long intervals. He never abandoned his purpose of removing his family to Dakota. He seems to have done no act indicating that he regarded Iowa as the place of his residence. We think that actual residence, with the purpose and intent that it is legal and shall be permanent, fixes the legal residence contemplated by the statute providing for service of original notices of actions by a copy delivered to a member of the defendant's family at his usual place of residence, without regard to the place of residence of his family. We know of no rule which fixes absolutely a man's residence at the place of residence of his wife and family. A presumption may arise that his residence is with his family, but that presumption may be overcome by evidence showing the fact to be otherwise. Such presumption is in this way overcome by the evidence in this case.''

In Botna Valley State Bk. v. Silver City Bk., supra, 87 Iowa 479, 482, 54 N. W. 472, 473, substituted service on a member of the family of one who, nine days previously, had mysteriously disappeared, was sustained as valid, this court stating:

''The law is well settled that, where a residence is once established, it continues until there is an actual change of habitation, with an intention to make a new residence. When a residence is once acquired, it is presumed to continue until there is satisfactory evidence that it has been abandoned. Hinds v. Hinds, 1 Iowa, 36; Nugent v. Bates, 51 Iowa, 77; Cohen v. Daniels, 25 Iowa, 88; State v. Groome, 10 Iowa, 308; Love v. Cherry, 24 Iowa, 204; Vanderpoel v. O'Hanlon, 53 Iowa, 246; Fry's Election Case, 71 Pa. St. 302. The burden was upon the defendants to rebut the presumption that Kelly's residence was on his farm. There is no evidence that nine days after he was last seen, when the service was made, he had taken up his residence elsewhere.''

Des Moines Sav. Bk. v. Kennedy, supra, 142 Iowa 272, 120 N. W. 742, involved a claim of nonresidence which was held to

be sufficiently established to warrant a verdict of a jury that the statute of limitations had not run against a note.

In Dickerson v. Utterback, supra, 202 Iowa 255, 256, 258, 207 N. W. 752, this court sustained jurisdiction based on substituted service, stating as follows:

"The return shows service at plaintiff's usual place of residence, by leaving copy with Mrs. Ray Dickerson, a member of the family, etc. The objection to the injunctive decree asserted at this point is that the place of service was not in fact petitioner's place of residence, and petitioner's wife was not in fact a member of his family, because he had separated from her; and that, therefore, there was no service in fact and no jurisdiction to grant the injunction. It is also claimed that petitioner did not have actual knowledge of the injunction.

"On the face of the record, the court did have jurisdiction, and the decree is valid, whether petitioner knew of the original notice or not. Hass v. Leverton, 128 Iowa 79; Wells v. Wells, 279 Mo. 57 (213 S. W. 830); Cooper v. Fourth Nat. Bank, 26 Ga. App. 44 (105 S. E. 375); Carroll v. Muller, 31 Ga. App. 209 (120 S. E. 548). The petitioner seems to think that the burden is on the State to prove the existence of jurisdiction in rendering a judgment on substituted service, though shown by a return fair and regular on its face. This is not correct. The presumption is in favor of the regularity and validity of the judgment and of the proceedings on which it was based, and not in favor of the defendant, who has violated it. * * *

"The place of residence of petitioner's family is presumed to be his domicile. Nugent v. Bates, 51 Iowa 77; Botna Valley St. Bank v. Silver City Bank, 87 Iowa 479. The officer's return is strong evidence of its correctness, and is not overcome by such testimony as that offered by petitioner. Galvin v. Dailey, 109 Iowa 332."

The only decision of this court, not cited by counsel, which would seem to be material is that rendered in the case of Galvin v. Dailey, 109 Iowa 332, 336, 80 N. W. 420, 421, wherein a new trial was granted on the grounds of unavoidable casualty or misfortune, but jurisdiction, based upon substituted service, was upheld, this court stating:

"The notice was served on the 10th day of February, 1880. In the latter part of the year 1879 the plaintiff left her home in Mitchell county, taking with her clothing and a daughter twelve years of age, and went to Decatur county, where she stayed with a sister, not intending to return. She states that she left her home because she could not stay there on account of the drinking habit of her husband, and because he did not contribute to her support. In the latter part of April, 1880, she returned to her home in Mitchell county, and she and her husband again lived together there. She had no actual knowledge of the action in the justice's court, and did not appear therein, and did not know of the judgment until in the year 1896. It is the general rule that the domicile of the husband is, in law, the domicile of the wife, excepting in proceedings for divorce. Kline v. Kline, 57 Iowa, 386; 10 Am. & Eng. Enc. Law (2d ed.) 32; Schouler Domestic Relations, section 37. The evidence does not show that the plaintiff had sufficient legal ground for a final separation from her husband, nor are we satisfied that when she left him she intended that the separation should be permanent. That it was not permanent is shown beyond controversy, and we are of the opinion that her residence at the time the original notice was served was, in law, at the place of her husband's residence."

From the foregoing review, it appears that heretofore this court has been called upon to construe the terms "county of his residence" and "his usual place of residence," appearing in the statute relating to substituted service, in five cases. In four of them jurisdiction was sustained; in only one was it not. In the four cases where jurisdiction was sustained, the substituted service was made at the legal residence or domicile of the person sought to be served. In the one case where jurisdiction was denied, defendant's legal residence or domicile was found to be in a foreign state. It is conceded that the service here made was perfected at the domicile or legal residence of the defendant. Accordingly, all of our prior decisions are in accord with the ruling of the trial court. None of our decisions supports the contention of defendant-appellant herein. Pursuant to such prior holdings, we now interpret the term "county of his residence" as meaning county of his legal residence or domi-

cile. The statute contemplates a county from which the defendant may be physically absent and therefore "not found" therein. The term "usual place of residence" means the usual place of residence in the county of defendant's legal residence or domicile. Service was made herein at such residence.

Quite an exhaustive review of the decisions from other jurisdictions which construe statutes relating to substituted service is found in an annotation in 127 A. L. R., at pages 1267 to 1276 inclusive. The statutes are shown to vary in their terminology. The decisions interpreting the term "usual place of residence" are set forth at pages 1273 to 1275 inclusive. Examination of such cases discloses that the decisions of this court find abundant support in the decisions from other jurisdictions. It would seem to be unnecessary to encumber this opinion with a résumé of such decisions. We are satisfied to adhere to our prior holdings and see no reason to depart therefrom.

We have stated repeatedly that the officer's return is presumed to be regular and valid. The burden is on him who challenges the return to prove that it is false. The showing here made is insufficient to impeach the return of service. The special appearance was properly overruled.

It might be appropriate to state that this case does not involve the Soldiers' and Sailors' Civil Relief Act of 1940, U. S. C., Title 50, section 501 et seq. Counsel for defendant state that the case has not gone that far as yet and counsel for plaintiff forecast that such statute will undoubtedly form the basis for the next hurdle to be negotiated.

The cause is—Affirmed.

All JUSTICES concur.