**Sara A. KARLSSON**

v.

**Baruch RABINOWITZ.**

**Civ. No. 13924.**

United States District Court
D. Maryland.

Oct. 25, 1962.

Carl J. Batter, Jr., Silver Spring, Md., for plaintiff.

Albert Brick and Samuel Intrater, Washington, D. C., and Solomon Liss, Baltimore, Md., for defendant.

WINTER, District Judge.

Defendant moves to quash the service of summons and complaint upon him, which were left with his wife at his alleged residence at 9921 East Bexhill Drive, Kensington, Maryland, on the ground that that address was not his "dwelling house or usual place of abode" within the meaning of Rule 4(d) (1), F.R.Civ.P. 28 U.S.C.A., which provides that service of the summons and complaint shall be made upon a defendant, *inter alia*, "* * * by leaving copies thereof at his dwelling house or usual place of abode, with some person of suitable age and discretion then residing therein * * *."

The complaint for debt, damages for breach of contract, and damages for fraud and misrepresentation was filed on July 3, 1962, and the return shows that the summons and complaint were served upon Mrs. Baruch Rabinowitz, at 9921 East Bexhill Drive, Kensington, Maryland, on July 25, 1962.

The essential facts are not disputed, and appear from affidavits filed by both parties in the case. On or about May 21, 1962, defendant concluded to leave the State of Maryland and establish his residence and business in Phoenix, Arizona, and, on that day, he went to Phoenix to accomplish these purposes. While in Arizona, on June 1, 1962, he entered into an employment agreement with an Arizona employer and, on June 4, 1962, he signed a contract of sale and made a deposit for the purchase of a new home in Phoenix. Thereafter, he returned to Maryland to settle his personal affairs. On June 20, 1962, he signed a contract of sale in regard to his home at 9921 East Bexhill Drive, Kensington, Maryland, and he also signed the papers necessary to complete the sale, settlement for which was scheduled on August 3, 1962. His affidavit states that, on or about July 5, defendant left the State of Maryland, giving up his residence permanently and not intending to return. He traveled to a motel in Phoenix, where he intended to reside until the house which he had purchased, and which was in the process of construction, was completed. On July 10, 1962, he purchased a new automobile in Arizona, and obtained Arizona license plates. On July 12, 1962, he obtained an Arizona driver's license, at which time he surrendered to the Arizona licensing authorities his Maryland driver's license.

After his departure on July 5, 1962, defendant's wife and family continued to reside at 9921 East Bexhill Drive, Kensington, Maryland. It was represented at the hearing that Mrs. Rabinowitz remained to dispose of certain household furnishings, to arrange for other household furnishings to be shipped to Arizona, and to be present in person at the settlement so that she could deliver the deed which had been previously signed by her husband. Immediately after the settlement, she and her children joined defendant in Arizona.

Plaintiff's affidavit does not seriously contest these facts. It shows that on July 30, 1962 record title of the Kensington, Maryland residence was vested in the defendant and his wife, and that sometime prior thereto the premises were occupied by the defendant, his wife, his children and a maid, although plaintiff fails to state exactly when prior to July 30, 1962 defendant, himself, last occupied the premises. On August 2, 1962, defendant was listed in the telephone book (date of publication not disclosed) as residing in Kensington, Maryland; on August 2, 1962 the United States Post Office at Kensington had not received a request for change of address for defendant; and, on August 3, 1962, defendant had not obtained a personal telephone listing in Phoenix, Arizona.

The first question to be considered is the date as of which it is to be determined whether the residence at Kensington, Maryland was defendant's "dwelling house or usual place of abode." Counsel agree that the date is the date of service. There is a paucity of authority on this exact point, although it is stated by Professor Moore, in 2 Moore's Federal Practice, ¶ 4.11, p. 929, that the determination should be made as of the time service is made. It seems to the Court that this is the crucial date, rather than the date the cause of action arises, or the date suit is instituted, and the decision here will proceed on that basis.

While there are many cases determining, under varying facts, whether service upon a defendant was valid because left "at his dwelling house or usual place of abode," within the meaning of Rule 4(d)(1), supra, or under State statutes of like import, each proceeds on its own facts and, with rare exception, a given set of facts is not duplicated. See cases collected in 2 Moore's Federal Practice (1961 Ed. and 1961 Cum.Supp.) ¶ 4.11, pp. 929, et seq.; 1 Barron and Holtzoff, Federal Practice and Procedure (1961 Ed.), § 177, pp. 664, et seq. Factually, the case closest to that at bar is Williams v. Capital Transit Co., 94 U.S.App.D.C. 221, 215 F.2d 487 (1954), where service was made upon a husband by service upon his wife, but where it appeared that, after the cause of action arose, but before service upon the wife, the husband separated from the wife and established residence with his mother and never thereafter resided at the wife's address. Indeed, after residing for a while with his mother, the husband became employed in another state and became a permanent resident of the other state, divorced his first wife and remarried. Notwithstanding that the trial court recognized that Rule 4(d)(1) should be liberally construed, it held that valid service had not been obtained because the first wife's place of abode was not the husband's usual place of abode after he ceased to live there and, hence, the court was without jurisdiction to proceed against the husband. On appeal, this ruling was affirmed.

To the extent that there runs a common thread through the various cases, it is that a given place of abode will be treated as a defendant's dwelling house or usual place of abode within the meaning of Rule 4(d)(1) even if he is not then residing there, provided there is some basis upon which it can be said that there is a likelihood of his return. Stated otherwise, temporary absence from the otherwise usual place of abode does not

render service, by leaving a copy of the summons and complaint there with some person of suitable age and discretion then residing therein, ineffective, unless it appears that the defendant has departed from that place of abode with the intention not to return. For example, in Rovinski v. Rowe, 131 F.2d 687 (6 Cir. 1942), service upon a defendant was had by serving process upon his mother. Defendant had previously resided with his mother but had left some years before to enlist in the United States Navy, then had returned to his mother's residence for a short time and, thereafter, had engaged in employment which kept him away from his mother's home. It appeared, however, that from time to time he visited his mother, that he had established no permanent residence elsewhere, and that he had considered his mother's home as his legal residence. The lower court, in sustaining the validity of service, relied on the fact that the mother's home was the place to which the defendant returned when he had the opportunity to do so. This ruling was affirmed on appeal.

McFadden v. Shore, 60 F.Supp. 8 (D.C. E.D.Pa.1945), sustained the validity of service upon a serviceman where process was served upon his sister, with whom he resided prior to his entry into military service. In distinguishing a case reaching a different result under a New Jersey statute, Eckman v. Grear, 14 N.J.Misc. 807, 187 A. 556 (N.J.1936), (which had held that a serviceman, upon entry into the service, gave up his usual place of abode when he sold all of his personal belongings and expressed the intention to remain permanently in the service), the District Court stated that there was "no animo revertendi" present in that case, as was present in Ruth & Clark v. Emery, 233 Iowa 1234, 11 N.W.2d 397 (1943), which sustained service upon an adult resident of a serviceman's civilian residence. Skidmore v. Green, 33 F.Supp. 529 (D.C.S.D.N.Y.1940) upheld the validity of service on a retired policeman when process had been left with his sister-in-law at her home in New York, even though the defendant spent most of his time traveling about the country in a car and trailer. It appeared, however, that notwithstanding long and leisurely trips to Florida and other places he would return from time to time to the home of his sister-in-law. See also: Earle v. McVeigh, 91 U.S. 503, 23 L.Ed. 398 (1876); Bohland v. Smith, 7 F.R.D. 364 (D.C.E.D.Ill.1947).

■ In the case at bar defendant states, under oath, that when he left Maryland on July 5 he did not intend to return and he intended to give up his residence permanently. This statement of his intention is corroborated by his subsequent act of purchasing a new automobile in Arizona, obtaining an Arizona driver's permit and surrendering his Maryland driver's permit, and it is also corroborated by the fact that, prior to July 5, he entered into an employment agreement in Arizona and contracted to purchase a house. These facts more than override any adverse inferences to be drawn from the continued presence of defendant's wife and children in Maryland after July 5, 1962. Under these circumstances, the Court can only conclude that, as a matter of fact, prior to the service of summons and complaint, defendant physically left Maryland and, at the time defendant physically left Maryland, he had no intention of returning, and, as a matter of law, 9921 East Bexhill Drive, Kensington, Maryland, ceased to be defendant's "usual place of abode" after July 5, 1962. Accordingly, service will be quashed.

Counsel for defendant may prepare an appropriate order.