LUDLOW, CLARK & COMPANY, Appellants, v. J. SZOLD, MRS. J. SZOLD, Defendants; J. K. LEE et al., Intervenors.

Venue: Residence of Defendant. S., who had been living in a rented house and doing business in Sioux City, gave up the key to his store and left on October 28, his family leaving soon thereafter. Five days before, he inquired of a railroad agent in Fort Dodge about some goods which S. had shipped there to G. and ordered that a car of goods billed to S. at Sioux City be delivered to G. On November 10, he registered at a hotel in Fort Dodge, inquired for rates, and said that he expected to go into a commission house there. Four days later the sheriff found him, "seemingly running G.'s store" in Fort Dodge, and took the goods and key away from him. There was some evidence that S. was helping G. on November 15. On November 16 S. could not be found. *Held*, that, as to an action aided by attachment begun in Sioux City, a finding that S. was not a resident of Sioux City on that day, but a resident of Fort Dodge, will not be interfered with, though a second attachment had discovered some property of S. in Sioux City. ROBINSON, J., *dissenting*. (1)

ABANDONMENT OF RESIDENCE, HOW PROVEN. While the acquiring of a new residence is convincing proof that the old has been abandoned, it is not the only evidence by which abandonment may be shown. (2)

*Appeal from Woodbury District Court.*—HON. SCOTT M. LADD, Judge.

THURSDAY, FEBRUARY 1, 1894.

ON NOVEMER 15, 1889, plaintiffs commenced this action, asking for an attachment, and to recover for goods sold and delivered. On the same day an attach-

ment was issued to Webster county, and on that day levied upon certain chattels, the property of defendant J. Szold. Intervenors filed their petitions, alleging that on November 16, 1889, and subsequent days, they severally brought actions in the district court of Webster county against J. Szold, and obtained judgments therein; that attachments were issued in said actions, which attachments were, upon said sixteenth day of November, levied upon the same property in Webster county on which plaintiffs' attachments had been levied. They allege that on November 15, 1889, defendants were not residents of Woodbury county, had no property therein subject to levy, were not served personally by plaintiffs in Woodbury county, and that, at the time intervenors brought their several suits, J. Szold was a resident of Webster county, and had therein the property levied upon, and that plaintiffs reached no property by attachment in Woodbury county. Intervenors ask that their liens upon the property attached be declared paramount and superior to the plaintiffs'. Plaintiffs answered these petitions, denying all allegations thereof, except as to the suits of the intervenors, the levies of their attachments, and the rendering of judgments. By agreement the issues, as to all the intervenors, were tried together to the court. Judgment was rendered in favor of intervenors, from which judgment plaintiffs appeal, assigning as errors that the judgment is contrary to law, and against the weight of the evidence.—*Affirmed:*

*E. J. Stason* and *W. P. Briggs* for appellants.

*S. M. Marsh, T. G. Henderson, J. S. Lothrop* and *R. M. Dott* for appellees.

GIVEN, J.—I. The principal contention is as to the place of residence of the defendant J. Szold at the time this action was commenced, November, 15, 1889.

It was admitted on the trial that Szold had been a resident of, and doing business at, Sioux City, Woodbury county for two years prior to October 28, 1889, at which time he was living in a rented house in said city; that on Saturday, October 26, he made four chattel mortgages, due on demand, upon his stock of goods and household furniture, for an amount largely in excess of their value, and on the following Monday morning, October 28, the mortgagees took possession of the stock and closed the store under said mortgages. The following facts are shown by the evidence, with but little, if any, conflict: On Monday morning, October 28, Szold gave the key to the store to the agent of mortgagees, and inquired if anything more was wanted with him, and, on being told there was not, left the store, and was not seen there after that time. He was seen at his house on the evening of the twenty-eighth, and this was the last time he was seen in Woodbury county. Several officers who had writs to serve upon him on different days following the twenty-eighth failed to find him in Sioux City, after diligent search. Mrs. Szold was seen at the house where defendant had resided, several times within the two or three days following the twenty-eighth of October, after which she was not seen in that county, and the house was found to be vacant, and all the household goods removed. It also appears that, on October 23 or 24, Szold was in Fort Dodge, and called on a railroad agent there to see about some goods that he had shipped to Robert Grant, at Fort Dodge, and made arrangements to stop a car of apples billed to him at Sioux City, in transit, and to turn them over to Grant, at Fort Dodge. On November 10, Szold registered at the Arlington Hotel in Fort Dodge, inquired as to the rates, did not say how long he would remain, but said, "he expected to go in a commission house." He said he had been in the wholesale commission business in Sioux City, and had had hard luck, and had to

sell out everything to square up, and only had two car loads of apples left; also that he had sent his wife and family to her people in Peoria, Illinois.   He remained in Fort Dodge until the morning of the sixteenth, when he and Grant left before breakfast; Szold saying that he was going east, but he did not do so. Neither Grant nor Szold were seen after that time.   On November 14, when the sheriff of Webster county went to Grant's place to levy the first attachment against Szold (one that is not in question), he found Szold there, "seemingly running the business."   The sheriff took possession of the goods under the writ, and received one key to the store from Szold.   Others testify to Szold's assisting Grant in his business during the time he remained.   On the night of November 15 the sheriff received a warrant for the arrest of Szold, and on the morning of the sixteenth was unable to find him, or to learn the direction in which he and Grant had gone.

II.   If, at the commencement of this action, November 15, 1889, J. Szold was a resident of Woodbury county, then the action was properly brought in that county, and plaintiff's attachment to Webster county was authorized.   Plaintiffs claim the law to be "that, where a residence is once established, it is presumed that the same continues until another residence is acquired."   They contend that it is not shown that Szold had acquired a new residence before the commencement of this action, and, therefore, his residence in Sioux City is presumed to have continued.   This statement of the law has support in some of the cases, notably *Church v. Crossman*, 49 Iowa, 444, and *Vanderpoel v. O'Hanlon*, 53 Iowa, 246, 5 N. W. Rep. 119. In those cases it was sought to show abandonment of the old residence by showing that a new one had been acquired.   The new not yet being acquired by a concurrence of the act and intention, the old was held to continue.   They do not hold that abandonment may

not be proven by other evidence than the fact of having gained another residence. In *Nugent v. Bates*, 51 Iowa, 77, 50 N. W. Rep. 76, the rule is stated thus: "When a residence is once acquired, it is presumed to continue until there is satisfactory evidence of abandonment." In the recent case of *Botna Val. State Bank v. Silver City Bank*, 87 Iowa, 479, 54 N. W. Rep. 472, it is said: "The law is well settled that, when a residence is once established, it continues until there is an actual change of habitation, with an intention to make a new residence." To hold that abandonment can be established only by evidence that a new residence has been acquired would render it impossible to show abandonment, in the cases of those whose whereabouts are unknown. While the fact that a new residence has been acquired is convincing evidence that the old has been abandoned, it is not the only evidence by which abandonment may be proven. The presumption of continued residence may be rebutted by any competent facts that show abandonment; that show "an actual change of habitation, with an intention to make a new residence."

III. Intervenors claim, not only that Szold had abandoned his residence in Sioux City prior to the commencement of this action, but also that he became a resident of Webster county. A distinction is recognized between legal and actual residence. In *Hinds v. Hinds*, 1 Iowa, 39; *Love v. Cherry*, 24 Iowa, 205; *Bradley v. Fraser*, 54 Iowa, 289, 6 N. W. Rep. 293, and other cases,—it is held that a person may be a legal resident of one place, and an actual resident of another, as when he goes from the place of his legal residence intending to return,—to reside temporarily at the other place. See, also, Code, section 3507, and *Fitzgerald v. Arel*, 63 Iowa, 105, 16 N. W. Rep. 712, and 18 N. W. Rep. 713. Legal residence as distinguished from a mere temporary actual residence, is the residence

contemplated in section 2580 of the Code, relating to
the place of bringing actions aided by attachment.
"The intention of the party, and his acts, are to be
considered, in determining the question; and they must
concur, in order to fix the fact of residence." *Cohen
v. Daniels*, 25 Iowa, 90. To enter the judgment which
it did, the district court must have found, not only that
Szold had ceased to be a resident of Woodbury county,
but that he became a resident of Webster county.
There is no evidence that prior to leaving Fort Dodge
he had become a nonresident of, or had even gone
out of, the state. He had abandoned his residence in
Sioux City. His family had gone. His property was
taken from him, and his business was broken up. So
far as appears, all that he owned was the property in
Grant's place, in Fort Dodge. After disposing of his
family, he went to Fort Dodge; inquired for rates at
the hotel; said he expected to go into a commission
house; was seen a few days after in Grant's place,
"helping with the goods," and later in possession of
the store wherein these attached goods were, "seem-
ingly running the business," and in possession of one of
the keys. He was thus engaged from his arrival, Novem-
ber 10, to the morning of November 16, when the
property having been taken on attachments against
Szold, and a warrant being in the hands of the sheriff
for his arrest, he fled the country. These findings of
the court upon questions of fact have the force and
effect of a verdict, and must not be disturbed, if there
is evidence to support them. While, if it were for us
to pass upon the facts, we might find differently, we
can not say that these conclusions of the lower court
are not supported by the evidence. The acts of Szold,
and his intention, as indicated by the facts, concur to
warrant the conclusion that when he came to Fort
Dodge it was with the intention of becoming a legal res-
ident there. That within a few days, when his prop-

erty was taken, and he pursued with a warrant, he fled the country, does not disprove that he came to Fort Dodge with the intention of remaining. These conclusions being sustained, it follows that plaintiff's action was brought in the wrong county, and their attachment to Webster county was unauthorized. Code, section 2580. The fact that property of Szold was found in Woodbury county on a second attachment issued in this case did not give jurisdiction to that court. Szold, being a resident of this state, could only be sued in the county of his residence, in this action. The judgment of the district court is AFFIRMED.

ROBINSON, C. J. (*dissenting*).—I can not agree to the opinion of the majority. It seems to me to be contrary to well grounded rules of law, and that it, in effect, overrules several decisions of this court. It is not shown that Szold had ever expressed to anyone, prior to the commencement of this action, an intention to abandon Woodbury county as a place of residence. He did not leave that county before the evening of October 28, 1889. His family were seen in the house they occupied as late as the fourth or fifth day of November. On the last of these days an agent of their landlord found the house locked, and that the family was gone. Five days later, Szold appeared in Fort Dodge, and made the statement set out in the opinion of the majority. He said he intended "to go in a commission house," but did not state where it was located, nor whether he knew what house he would enter. So far as is shown, he may have intended to return to Sioux City, and the absence of his family may at that time have been intended to be but temporary. However that may be, it is certain he neither said nor did anything which indicated a purpose to establish himself in Webster county. He appears to have been there only to help Grant for a short time—probably to dis-

pose of the apples which had been stopped at Fort
Dodge, and turned over to Grant. Szold remained
there only six days, when he and Grant disappeared,
and neither of them has been seen in that place since
that time. What became of them is not shown. In
*Botna Val. State Bank v. Silver City Bank*, 54 N. W.
Rep. 472, it appeared that one Kelly disappeared from
the county of his residence in September, 1889, and in
May, 1891, had not returned, and nothing was then
known as to where he had been staying. An action
was commenced against him nine days after he had
disappeared, and the original notice was served by
leaving a copy thereof with a member of his family, at
his former place of residence, which was described in
the officer's return as his "usual place of residence."
In holding the service sufficient this court said: "The
law is well settled that, where a residence is once
established, it continues until there is an actual change
of habitation, with an intention to make a new resi-
dence. When a residence is once acquired, it is pre-
sumed to continue until there is satisfactory evidence
that it has been abandoned. * * * The burden
was upon the defendants to rebut the presumption that
Kelly's residence was on his farm. There is no evi-
dence that nine days after he was last seen, when the
service was made, he had taken up his residence else-
where. We are asked to presume that he had done so.
No such presumption can be indulged. To do so
would rebut one presumption by another. The fact of
Kelly's presence in another place must be shown by
evidence, and not by presumption. To say the least,
no such presumption should obtain by an absence of
nine days." But in this case the absence of Szold for
eighteen days, six of which he spent in Fort Dodge,
and the absence of his family for ten days, evidently,
in part at least, for the purpose of visiting relatives of
the wife, are given the effect of presumptive and suffi-

cient proof of a change of residence. In *Vanderpoel v. O'Hanlon*, 53 Iowa, 246, 5 N. W. Rep. 119, it was said: "If a person leave the place of his residence or home with intent of residing in some other place, and making it his fixed place of residence, but never consummates such intent, it can not be said his residence has been changed thereby."

Applying that rule, this court held that a person who, having a place of residence in one county, left it, and thereafter spent several years in another county, but without any fixed purpose with respect to making it his permanent place of residence, did not become a resident of the county to which he removed, within the meaning of the law in regard to the qualification of electors. In *Nugent v. Bates*, 51 Iowa, 77, 50 N. W. Rep. 76, it was said that proof that a person having a residence in this state had gone to Chicago, purchased property and gone into business, with the intention of permanently locating there, while his family continued to reside in this state did not show a change of residence. In *Church v. Crossman*, 49 Iowa, 447, it appeared that Crossman had been a resident of St. Lawrence county in the state of New York, for several years prior to the first day of February, 1872. From the middle to the last of January, 1872, he sold his household effects, preparatory to moving to the state of Michigan. On the first day of February, 1872, he went with his family to his father's house, in Jefferson county, to stay until he should be ready to go west, having before that time shipped all his goods to Michigan excepting clothing, which he intended to carry in a trunk. On the second day of February, 1872, he was served with a summons in St. Lawrence county. On the thirteenth day of that month, he removed to Michigan. He contended that when served he was a resident of Jefferson county, within the meaning of a statute which provided that no person should be proceeded against

by summons out of the county in which he was resid-
ing. This court held that when served he had not
acquired a residence in Michigan, and that as he went
to his father's for two weeks merely for a temporary
purpose, with no intention of remaining more than
a short time, he did not become a resident of Jeffer-
son county, and that, for the purpose of the statute,
he continued to be a resident of St. Lawrence county
until he was served with the summons. If the aban-
donment of St. Lawrence county as a place of resi-
dence, made pursuant to a well settled and fully ma-
tured purpose, coupled with a two weeks sojourn in
Jefferson county, did not make Crossman a resident of
the latter, I am not able to understand how an absence
from Woodbury county of eighteen days, with an
intent as to residence at the commencement, which is
not shown, and which can only be conjectured, coupled
with a visit of but six days to Webster county, for the
apparent purpose of selling a car load of apples, can be
said to establish the residence of Szold in the county
last named. There is no conflict in the evidence in
regard to his residence, and the questions presented are
of law, and not of fact. I do not think an abandon-
ment of Woodbury county as a place of residence by
him is shown. If, however, it be conceded that different
persons might reach different conclusions in regard to
abandonment, it does not seem to me that can be said
in regard to the acquiring of a residence in Webster
county. In *Hinds v. Hinds*, 1 Iowa, 36, it was said
that, "while no definite time is necessarily implied in
the word 'resident' or 'reside,' yet permanency is
implied and expressly used in giving the definition."
It was further said that the court was not "aware * * *
of any authority that holds that a mere transient, tempo-
rary sojourn, with no intention to remain permanently,
can constitute a legal residence." In *Church v. Cross-
man, supra,* it was said of the word "reside," as used

in the New York statute, that it "means a permanent and fixed, and not a mere transient or temporary abode." That definition was quoted with approval in *Bradley v. Fraser*, 54 Iowa, 291, 6 N. W. Rep. 293. It seems to me that the definitions quoted are applicable to the provisions of the Code under which this action was brought, and that, when it was brought, Szold was a resident of Woodbury county, or else that he had no residence in the state. Whether the action should not have been brought in the county where the attached property was found, because Szold had no residence in the state, is a question not discussed in the opinion of the majority; but so far as it rests upon the claim that Szold was a resident of Webster county, it seems to me to be erroneous.