In the Matter of the Estate of MARTHA BINGHAM, Deceased.*

CHARLES BROGAN, Appellant; CECIL C. VAN VALKENBURGH et al., as Executors of MARTHA BINGHAM, Deceased, et al., Respondents.

Second Department, February 1, 1943.

* Affg. 178 Misc. 801.

*Arthur Knox, David Stein* and *Jesse Starkman* for appellant.

*Andrew F. Van Thun, Jr.,* and *Cecil C. Van Valkenburgh* for respondents Cecil C. Van Valkenburgh and Frank Hammond, as executors, etc.

*Charles P. Eschmann,* respondent in person.

LEWIS, J.   The appellant, Charles Brogan, who married the decedent Martha Bingham in 1887 in Ireland, contends that the Surrogate has erroneously denied him a right of election to take an intestate share as against the terms of her will, which makes no provision for him.   Martha Bingham died on May 17, 1941.

Shortly after their marriage the appellant and the decedent moved to New York City, where they lived together until they separated in 1908 or 1909.   In 1909 they entered into a separation agreement under which she released her dower rights in his property, released him from any further obligation to support her, and agreed not to create any debt chargeable to him, in return for certain property which he transferred to her.

In June, 1913, the decedent went to Carson City, Nevada, and after remaining there for six months, instituted a divorce action in which she obtained a default judgment on the ground of cruel and inhuman treatment.   The appellant did not appear in the action.   He was not served with process in Nevada.   He was, however, personally served with a summons in New York city, and the summons was also served by its publication in the Carson City News, pursuant to an order which designated that paper as one "most likely to give notice to said defendant," whose residence in the very same order was stated to be in New York City.   There is nothing in the record showing that he in any way aided the decedent to obtain her divorce.

The appellant, on February 7, 1922, while the decedent was still alive, entered into a ceremonial marriage with one Ella J. Niemeyer, at Philadelphia, Pennsylvania. In his marriage license application he referred to the Nevada divorce decree, stating that " he has once been married before, and marriage was dissolved by divorce D. C. State of Nevada, Cty. of Ormsby 29 Jan. 1914 Decree 6 Febr. 1917 Desertion."

Appellant contends that while the Surrogate was correct in holding the Nevada divorce decree to be invalid, it was error to decide that, by his Philadelphia ceremonial remarriage in 1922, he either abandoned the decedent or estopped himself from denying the invalidity of the Nevada decree. The respondents-executors contend that, in any event, the Nevada decree was entitled to recognition in New York, under the recent decision of the United States Supreme Court in *Williams* v. *North Carolina* (317 U. S. 287, decided December 21, 1942), holding substantially that the courts of one State, in observance of the full faith and credit clause of the Federal Constitution (art. IV, § 1), are required to recognize as valid a divorce decree granted in another State to a person there domiciled.

The *Williams* case is not controlling. The " divorcees " in that case went from their homes in North Carolina to Las Vegas, Nevada, and took up residence at an auto court there to satisfy the Nevada residence requirements. The majority opinion rested upon the admission of the North Carolina attorney-general that " there probably is enough evidence in the record to require that petitioners be considered ' to have been actually domiciled in Nevada.' " But the majority expressly preserved the doctrine of *Bell* v. *Bell* (181 U. S. 175), which Mr. Justice DOUGLAS stated was " a case in which this Court held that a decree of divorce was not entitled to full faith and credit when it had been granted on constructive service by the courts of a state in which neither spouse was domiciled." The majority opinion did not reach " the question whether North Carolina could refuse to recognize the Nevada decrees because, in its view and contrary to the findings of the Nevada court, petitioners had no actual, *bona fide* domicil in Nevada * * *." Here the Surrogate expressly found that the decedent's residence in Nevada was solely for the purpose of giving the court colorable jurisdiction of the divorce proceeding. That finding is supported by the decedent's own statement in the year 1918, to her election board, that she had resided in New York State for thirty years, and by other evidence showing that she had resided in this State continuously both before and after taking up her temporary

residence in Nevada. Since neither the appellant nor the decedent was domiciled in Nevada, the courts of this State are not required, even under the *Williams* case, to grant full faith and credit to the Nevada decree.

The policy enunciated in *Lefferts* v. *Lefferts* (263 N. Y. 131), requires the courts of this State to pass upon the *bona fides* of the residence of divorcees. That policy was not impaired by the decision in the *Williams* case, which expressly reserved the question whether the courts of one State might refuse to recognize the findings of the courts of another State as to domicile. All that the majority purported to do in the *Williams* case was to overrule *Haddock* v. *Haddock* (201 U. S. 562), and to remove from the question of full faith and credit consideration of the subsidiary question whether the person who had removed from the matrimonial domicile had wrongfully done so. The Supreme Court of the United States, in the *Williams* case, did not eliminate domicile as a foundation for jurisdiction.

Since there is support for the Surrogate's finding that the decedent did not acquire a *bona fide* residence in Nevada, it is not necessary to pass upon the respondents-executors' contention that the matrimonial domicile was "severed and terminated" by the separation agreement entered into by the decedent and appellant.

The appellant, who remarried in Philadelphia in 1922, contends that the doctrines of estoppel and waiver have been applied only to persons who have obtained invalid decrees or have aided or connived at their procurement. The appellant's statement does not give due weight to the holding in *Kelsey* v. *Kelsey* (204 App. Div. 116 [4th Dept., 1922]; affd., 237 N. Y. 520). There Caroline A. Kelsey obtained an invalid divorce in Pennsylvania. She remarried. Her "divorced" husband, Guy W. Kelsey, also remarried. In an action for divorce later brought by Guy W. Kelsey against Caroline A. Kelsey on the ground of adultery, it was held that "if plaintiff desired to challenge his first wife's divorce and her remarriage he should have delayed his second marriage until he had obtained a divorce from his first wife. I think now he is not in position to invoke such relief" (p. 117). See, also, *Matter of Briggs* (138 Misc. 136, 147, 148; affd., 232 App. Div. 666 [1st Dept., 1931]), where the Surrogate of New York county, relying on *People* v. *Baker* (76 N. Y. 78, 84), stated that the New York policy not to recognize invalid foreign divorce decrees had been adopted "for the benefit of New York citizens who refused to be bound by the foreign decrees." The Restatement of the Law of Con-

flict of Laws, section 112, states that " The validity of a divorce decree cannot be questioned in a proceeding concerning any right or other interest arising out of the marital relation, * * * by a spouse who takes advantage of such decree by remarrying."

The appellant, by his remarriage, barred himself from questioning the validity of the decedent's Nevada divorce. He was not entitled in this proceeding to claim to be the spouse of the decedent. Not being in a position to claim the rights of a spouse, he could assert no rights under section 18 of the Decedent Estate Law.

The decree should be affirmed, with costs to the respondents, payable out of the estate.

Present — CLOSE, P. J., HAGARTY, JOHNSTON, ADEL and LEWIS, JJ.

Decree of the Kings County Surrogate's Court, in so far as appealed from, unanimously affirmed, with costs to respondents, payable out of the estate.