ANGELE C. REESE, Plaintiff, v. M. WINSTON REESE, Defendant.

Supreme Court, Special Term, Queens County, March 10, 1943.

*John McKim Minton* and *Eileen M. Lucey* for plaintiff.

*Fannie M. Schwab* and *Isidor H. Lutzker* for defendant.

HALLINAN, J. Plaintiff wife seeks a judicial separation from the defendant husband and alimony for her support and of the child of the parties — a daughter born in New York City on January 6, 1935.

It is undisputed that the defendant left the plaintiff on June 4, 1941; that on April 27, 1942, he instituted an action for divorce

against the plaintiff herein in the Circuit Court of Florida, 11th Judicial District, Dade County, on a ground other than adultery; that she was served by publication and appeared neither personally nor by attorney; that a decree of divorce was entered by default on the 16th day of June, 1942; that he remarried on June 17, 1942, in Florida; and that he and the woman he married have ever since lived together and hold themselves out to be husband and wife.

Under these circumstances the substantial question involved is the validity of the divorce decree obtained in the State of Florida. The defendant contends that under the recent ruling of the Supreme Court of the United States in *Williams* v. *North Carolina* (317 U. S. 287), his divorce decree is entitled to be given full faith and credit by the courts of this State; "that should the Supreme Court, as at present constituted, be confronted with the necessity of deciding whether one state has the power to refuse full faith and credit to the decrees of another, because, contrary to the findings of the court first deciding, the other finds no bona fide domicile was acquired, the Supreme Court would hold that the latter court has no power to reexamine the question of domicile;" that in any event the plaintiff has the burden of disproving defendant's domicile in Florida, and that she has not succeeded in sustaining this burden.

It was clearly stated in the *Williams* case that the rule laid down in *Haddock* v. *Haddock* (201 U. S. 562) would no longer be followed. Nevertheless, it cannot be overlooked that in the *Williams* case the court was passing upon a criminal prosecution and not, as here, upon a matrimonial action prosecuted by the abandoned wife in the matrimonial domicile and *directly* involving the marriage status, concerning which the Court of Appeals has in a comparatively recent case said: "Marriage is more than a personal relation between a man and woman. It is a status founded on contract and established by law. It constitutes an institution involving the highest interests of society. It is regulated and controlled by law based upon principles of public policy affecting the welfare of the people of the State. 'Marriage, as creating the most important relation in life, as having more to do with the morals and civilization of a people than any other institution, has always been subject to the control of the Legislature * * *.' There are, in effect, three parties to every marriage, the man, the woman and the State." (*Fearon* v. *Treanor*, 272 N. Y. 268, 272.)

Moreover, the *bona fides* of the domicile in Nevada was not put in issue in the *Williams* case but was assumed, the court

specifically stating: "We thus have no question on the present record whether a divorce decree granted by the courts of one state to a resident as distinguished from a domiciliary is entitled to full faith and credit in another state." At least until a definite rule to the contrary has been made, it seems clear that a party must be *genuinely* domiciled in the divorce State to compel the courts of New York to give the divorce decree full faith and credit. As recently stated by the Appellate Division, Second Department (*Matter of Bingham,* 265 App. Div. 463): "But the majority expressly preserved the doctrine of *Bell* v. *Bell* (181 U. S. 175), which Mr. Justice Douglas stated was 'a case in which this Court held that a decree of divorce was not entitled to full faith and credit when it had been granted on constructive service by the courts of a state in which neither spouse was domiciled.' The majority opinion did not reach 'the question whether North Carolina could refuse to recognize the Nevada decrees because in its view and contrary to the findings of the Nevada court petitioners had not actual, bona fide domicile in Nevada * * *.' * * * All that the majority purported to do in the *Williams* case was to overrule *Haddock* v. *Haddock* (201 U. S. 562), and to remove from the question of full faith and credit consideration of the subsidiary question whether the person who had removed from the matrimonial domicile had wrongfully done so. The Supreme Court of the United States, in the *Williams* case, *did not eliminate domicile as a foundation for jurisdiction.*" (Italics mine.) (See also *McCarthy* v. *McCarthy,* 179 Misc. 623.)

It is accordingly the opinion of this court that the question whether the defendant was domiciled in Florida, whose courts granted him the divorce decree, may properly be considered in this matrimonial action brought by the spouse against whom such decree was granted by default, and upon whom mere constructive service of process was made.

The burden does not, as contended by the defendant, rest upon the plaintiff to disprove domicile in Florida. The *Williams* case gave no intimation of the minimum standards of domicile in the divorce State, nor whether that State, or the State where its assumption of jurisdiction is challenged, shall establish such standards. Under these circumstances the court will apply established principles, particularly since they are consistent with fairness and justice. Who better than the party claiming a new domicile is in possession of the facts thereof? To place upon the spouse who has been abandoned the burden of *disproving* the domicile of the other in the divorce State, would, indeed,

be a heavy burden. It would be difficult, and in many instances impossible, in view of the great expense involved, for the abandoned spouse to obtain the necessary proof in the usually distant divorce State. Moreover, it would appear that in the instant case the defendant has assumed the burden by pleading his Florida divorce decree as an affirmative defense, and concluding that by reason thereof '' the marriage entered into by and between the plaintiff and defendant has been dissolved and no longer exists.''

'' The question of what place shall be considered the domicile of a party is rather one of fact than of law, and courts must draw their conclusion from all the circumstances of a given case.'' (*Pignatelli* v. *Pignatelli,* 169 Misc. 534, 537.) The presumption of law is against a change of domicile. Abandonment must clearly appear and the onus is on him who asserts it. The rule was recently succinctly stated as follows by the Appellate Division, Second Department (*Matter of Johnson,* 259 App. Div. 290, affd. 284 N. Y. 733) : '' Once a domicile is established, it continues until superseded by a new domicile. (Restatement, Conflict of Laws, § 23.) In order to effect a change there must have been proof that the decedent had freely chosen another domicile and that this choice was followed by physical presence at a dwelling place and the intention to make it a home. There must be concurrence of the fact and the intent, the *factum* and the *animus.* (*Gilbert* v. *David,* 235 U. S. 561.)''

'' Residence in fact, coupled with the purpose to make the place of residence one's *home,* are the essential elements of domicile.'' (*Texas* v. *Florida,* 306 U. S. 398, 424.) (Italics mine.) Personal residence can exist distinct from a matrimonial domicile. (*Gould* v. *Gould,* 235 N. Y. 14, 29.) A person may have several residences but only one domicile. (Dicey on Conflict of Laws [1896 ed.] p. 95 ; 1 Warren's Heaton on Surrogate's Courts [6th ed.] p. 140 ; *Matter of Newcomb,* 192 N. Y. 238, 250, 251.)

In the last-cited case the court said (pp. 250, 251) : '' Residence means living in a particular locality, but domicile means living in that locality with intent to make it a fixed and permanent home. Residence simply requires bodily presence as an inhabitant in a given place, while domicile requires bodily presence in that place and also an intention to make it one's domicile. * * * A change of domicile may be made through caprice, whim or fancy, for business, health or pleasure, to secure a change of climate, or a change of laws, or for any reason whatever, provided there is an absolute and fixed intention to abandon one and acquire another and the acts of the person

affected confirm the intention. (*McConnell* v. *Kelley,* 138 Mass. 372.) No pretense or deception can be practiced, for the intention must be honest, the action genuine and the evidence to *establish* both, *clear and convincing.*" (Italics mine.)

The parties hereto were married in Queens County, New York, on June 6, 1931. The defendant was at that time a student at Yale, and after the marriage the parties lived in New Haven for two years until his graduation. Thereafter they first visited her family in New York City and then his family in Ohio. In the latter State they stayed approximately one year. They returned to New York in 1934 and resided together in various apartments in New York City up to the time that the defendant abandoned the plaintiff in June, 1941. The only child was born on June 6, 1935, and now resides with the plaintiff in the county of Queens. The defendant in his brief admits that the parties " were domiciled in the State of New York in 1941." There can, therefore, be no question as to the location of the established matrimonial domicile of the parties at that time. The defendant left New York early in January, 1942, arriving in Fort Lauderdale, Florida, on January 7th or 8th of that year. He occupied an apartment consisting of two rooms. Some three weeks after his arrival he opened a small parcel-delivery service known as " The Minute Man Delivery Service " in Fort Lauderdale, in which his total investment was some $700, and which netted him an income during his stay in Florida of some fifteen dollars to twenty dollars per week. Some short time after his arrival in Fort Lauderdale, the woman whom he subsequently married, a mother of three children, and who had lived with her husband and family in the same neighborhood in Jackson Heights, Queens County, where the parties to this action lived, arrived in Fort Lauderdale, Florida, with one of her children, took an apartment in the same group of buildings where the defendant lived, and instituted an action for divorce against her husband through the same attorney who represented the defendant in his divorce proceeding. Her divorce was granted a short time before that of the defendant, and the day after the decree was made in his favor they were married. Both left Florida, never to return, three days after the marriage. He went to Ohio because, according to his testimony, the plaintiff had tied up some property which he owned there, and his new wife went to New Hampshire to visit two of her children who were staying with her mother. She then joined him in Ohio where they stayed for about a month. They returned East in August of 1942 where

they leased an apartment in Greenwich, Connecticut, and where they now reside with his wife's three children and mother.

The defendant testified that he went to Florida with the intention of establishing a permanent home; that he in fact did establish such a home; that he left Florida on June 20, 1942, solely under the compulsion of being present in Ohio to resist plaintiff's legal proceedings; that it was his intention to return to Florida but he did not do so because the Local Selective Service Board in Jackson Heights, Queens County, where he had registered, had placed him in 1-A, and that he desired to be close by in order to be near his daughter before his induction. He, therefore, took an apartment, with a thirty-day cancellation clause in his lease, in Greenwich, Connecticut; that he still operates the parcel-delivery service in Fort Lauderdale, Florida, through an employee, but at a loss, and that a small balance remains on deposit in a bank account in said city.

Upon the foregoing facts he requests a finding that he had established a domicile in Florida and had not subsequently reestablished it in New York or elsewhere. Such a finding is not justified by the record. The defendant decided to divorce the plaintiff months before he left New York for Florida. He conceded that he discussed this matter with the plaintiff and that he had his attorney draw up a proposed agreement, containing, among other provisions, the following: " EIGHTH: It is further agreed that should the husband establish a residence, and institute a suit for absolute divorce in the State of Nevada or the State of Florida, or such other State in which similar grounds will furnish a basis for a decree of absolute divorce, the wife agrees to appear legally in said action and not to contest the same; the wife hereby expressly authorizing any attorney selected by the husband to retain counsel to appear in behalf of the wife. It is expressly agreed, however, that in the event of any such action, the husband shall be obligated to exhibit this agreement to the court, and request that the decree embody the provisions."

Upon plaintiff's failure to execute this agreement, the defendant went to Florida because, according to his testimony, he wanted to live in a State where he " could live reasonably and cheaply," and where he " could avoid a state tax and also a Federal Inheritance tax." When asked: " Were those your only reasons?" he answered: " Why, perfectly frankly, the advantages of going to a state where divorce rulings are somewhat more liberal may have been a secondary objective, although not the primary one."

It seems clear to the court, upon a consideration of the facts and circumstances established by the record, that the sole purpose of the defendant in going to Florida was to satisfy the easier residence and other requirements of that State in respect to a divorce so that he might be free to marry another woman. True, he testified that he resided in Florida with the intention of making it a permanent home, but " against conduct, talk has little weight." (*Matter of Fischer,* 151 Misc. 74, affd. 243 App. Div. 685.) While evidence of intention is admissible in determining domicile, its probative value must yield to more certain proof. That he established a small business in Florida is not decisive; indeed, his principal financial interests are situated in Ohio, and yet it cannot be claimed that because of that fact he is domiciled in Ohio.

The court finds that the matrimonial domicile of the parties was at all times in New York and that the defendant acquired no domicile in Florida; that he resided there temporarily and solely for the purpose of giving the courts of that State colorable jurisdiction to grant him a divorce on a ground not recognized in the matrimonial domicile; and that such a divorce is not entitled to full faith and credit in this State so as to bar the assertion of plaintiff's rights in the instant matrimonial action.

The plaintiff's motion for judgment is, accordingly, granted, and that of the defendant denied with appropriate exceptions. Alimony for the support of the plaintiff and of the child of the parties is allowed in the sum of $250 per month, of which $80 is allocated to the child and $170 to the plaintiff.

Settle findings of fact, conclusions of law and decree on notice.