446 So.2d 1124 (1984)
Donna MULHERN, Appellant,
v.
Russell J. MULHERN, Appellee.
No. 82-1681.
District Court of Appeal of Florida, Fourth District.
February 29, 1984.
Rehearing Denied April 4, 1984.
Alan S. Fishman of Scherer, Fishman & Carlton, Fort Lauderdale, for appellant.
R.E. Conner, Plantation, for appellee.
WALDEN, Judge.
This is an appeal from a dissolution of marriage judgment. It involves the interpretation and application of an ante nuptial agreement. Appellant is the former wife and appellee is the former husband.
The agreement, prepared by the husband's attorney, materially provided:
1. A waiver of attorneys fees and costs by the wife.
2. All such obligations of and payments by HUSBAND shall terminate conclusively and forever upon the first occurrence of the death or the remarriage of WIFE or her residing with *1125 an adult male other than a blood relative. (emphasis supplied)
The trial court did two things which form the focal points of this appeal:
1. In a post judgment proceeding the wife's application for attorney fees was denied in toto based solely upon the waiver found in the agreement.
2. In the final judgment it was found:
7. The parties are in agreement that the intention of the alimony provision contained in the aforementioned agreement is that any payment to be pro-rated to provide only for the period of time between the parties separation and residency by the wife with a male not a blood relative.
And adjudged:
5. The Husband, pursuant to the terms of the ante Nuptial Agreement, shall pay to the Wife the sum of $8,726.60, which represents 106 days from the date of the separation of the parties until the date the Wife commenced residency with a male other than a blood relative.

Denial of Attorneys Fees
We hold that the denial of attorney fees based solely on the agreement waiver was reversible error. In our opinion the trial court should have adjudicated the issue, without bar of the agreement, considering all the usual pertinent criteria such as the respective financial circumstances of the parties, that is to say, the need of the wife and the ability of the husband to pay. It is basic that the purpose of awarding attorney fees is to place the spouses on a financial parity for the prosecution or defense of the dissolution action.
As we understand it, the rule in Florida as provided by Belcher v. Belcher, 271 So.2d 7 (Fla. 1972) is that, regardless of a waiver or limitation provided in a marital contract, a husband's obligation of support, to include his obligation to pay attorney fees, suit money, and costs continues while the parties are still married, that is to say, until the moment the marriage is actually dissolved by final judgment. Of course, the agreement may be considered in the event it provides other financial support or assets to the wife pendente lite insofar as it may bear on the equation of the wife's need vs. the husband's ability.
More specifically, Belcher v. Belcher, supra, at page 9 provides:
For temporary support, suit money and temporary attorney's fees, the State remains an interested party and cannot be excluded by contract during this period of continuance of the legal relationship of husband and wife. Contracts are made in legal contemplation of existing, applicable statutes and so it is that marriage contracts and any ante or post-nuptial contracts are entered into subject to then existing law, including the law of this state that makes a husband responsible for the support of his wife while she is married to him.
Continuing, the application for such fees may be made before or after judgment so long as the claim and award are limited to services rendered prior to entry of judgment. We believe that the only distinction between a pre-judgment application could be that, if the agreement is adopted and it provides assets or income to the party movant, an application post judgment may present a different financial picture. When the application is made pre-judgment it will not be known if the agreement will be approved and hence any post judgment provision for the movant cannot be considered in an assessment of the respective finances.
We reverse the order denying attorney fees upon the authority of Belcher v. Belcher, supra, and Young v. Young, 322 So.2d 594 (Fla. 4th DCA 1975) and remand for further proceedings consistent herewith.

Termination of Husband's Obligations By Reason of The Wife's Residency With a Male Other Than a Blood Relative.
As a preliminary, we would have been disposed to hold from the whole language *1126 of the agreement and our construction of it that such habitation prior to final judgment and adoption of the agreement would be of no moment. However, the parties, according to the court's recital, agreed that the agreement would be operable beginning with the separation of the parties, and here the parties have not contended otherwise. Thus, we use that time frame and look only to see if the wife did reside post separation with an adult male other than a blood relative within the contemplation of the agreement.
We pause to note, since we did not choose to incorporate here the whole agreement, that the agreement did not provide definitions, guidelines, criteria or any other specific insight as to what the parties intended by the words "residing with" an adult male other than a blood relative.
We have examined all the testimony on this issue and at most, in support of the judgment, it appears that the Wife spent the night, or a part of a night, at Mr. Salerno's apartment somewhere between five and thirteen times following separation and prior to final judgment. The separation took place around September 17, 1981, and the judgment was entered on June 24, 1982. The Wife testified that she stopped seeing Mr. Salerno on January 22, 1982, and there is no counter indication in the record. The final hearing took place in June of 1982.
The Wife had an apartment following separation, which had no relationship to or with Mr. Salerno, where she and her son resided. There is no testimony, with reference to the Salerno apartment, that the Wife kept her clothing there, other than the possibility that she changed into an evening gown there on New Year's Eve. There is no testimony that she ate or prepared meals there. There is no testimony that she maintained a telephone or mail listing there. There is no testimony of any other use or intendment on the part of the Wife normally considered as indicia or criteria in determining residence or where a person resides.
An ante-nuptial agreement does not differ from other agreements and it should be construed and interpreted in the same manner as other contracts. Vance v. Vance, 143 Fla. 513, 197 So. 128 (1940); Bergman v. Bergman, 145 Fla. 10, 199 So. 920, as modified (1940); Underwood v. Underwood, 64 So.2d 281 (Fla. 1953); Sosnowitz v. Sosnowitz, 342 So.2d 524 (Fla. 3d DCA 1977), cert. denied 352 So.2d 174 (Fla. 1977). Moreover, the applicable standard of contract interpretation is one which is realistic, based upon the contract's plain meaning, unless the context of the contract demonstrates the parties' intention that a different meaning be given. Bergman v. Bergman, supra.
A myriad of cases have been suggested and found which deal with residing. However, they are specialized with reference to statutory interpretation, taxation, homestead, right of suffrage, divorce jurisdiction, limitations of actions, legal residence, domicile, and the like. We feel that such cases have no meaningful bearing on the instant problem.
We think that the contract provision should be given its common sense everyday meaning and we, therefore, look for dictionary help.
Both parties cite Black's Law Dictionary, 3rd Edition, at page 1543:
A distinction is recognized between legal and actual residence. A person may be a legal resident of one place and an actual resident of another. He may abide in one state or country without surrendering his legal residence in another if he so intends. His legal residence may be merely ideal, but his actual residence must be substantial. He may not actually abide at his legal residence at all, but his actual residence must be his abiding place. Tipton v. Tipton, 87 Ky. 248, 8 S.W. 440; Hinds v. Hinds, 1 Iowa, 36; Fitzgerald v. Arel, 63 Iowa, 104, 18 N.W. 713, 50 Am.Rep. 733; Ludlow v. Szold, 90 Iowa, 175, 57 N.W. 676.
RESIDENT. One who has his residence in a place. The term is an elastic one and may mean a person who is domiciled *1127 at a place, or a citizen, or merely one who is temporarily living at a place, or carries on business there. U.S. v. Gronich (D.C.) 211 F. 548, 550; Travis v. Yale & Towne Mfg. Co., 252 U.S. 60, 40 S.Ct. 228, 232, 64 L.Ed. 460.
Black's Law Dictionary, Revised Fourth Edition, offers the following definitions at page 1473:
RESIDENCE. A factual place of abode. Living in a particular locality. Reese v. Reese, 179 Misc. 665, 40 N.Y.S.2d 468, 472; Zimmerman v. Zimmerman, 174 Or. 585, 155 P.2d 293, 295. It requires only bodily presence as an inhabitant of a place. In re Campbell's Guardianship, 216 Minn. 113, 11 N.W.2d 786, 789.
Looking back to the words of the restriction, Mr. Salerno was an adult male other than a blood relative. So, the neat question is, did the Wife reside with him. We think not. It appears that the Wife had a romantic relationship and that she dated Mr. Salerno for a short period, during which time she spent a few nights at his apartment. We do not equate this as "residing with." We cannot recite every hypothetical set of facts where such a restriction would apply. Suffice it to say, it would take a showing substantially greater than the case at hand. It would not embrace episodic sexual or romantic liaisons, without more. Had the Husband intended otherwise, such could have been included in the agreement. We reverse the finding that "The Wife, during the early part of 1982, resided with a male not a blood relative" and the consequent limitation upon the Wife's entitlement to payments under the agreement.
The remaining points are deemed to lack merit.
We reverse and remand for further proceedings consistent herewith.
REVERSED AND REMANDED.
DOWNEY and LETTS, JJ., concur.