DISTRICT OF COLUMBIA,
Appellant,

v.

Dorothy K. STACKHOUSE,
Appellee.

No. 12815.

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 13, 1956.

Decided Nov. 15, 1956.

Mr. Hubert B. Pair, Asst. Corp. Counsel for the District of Columbia, with whom Messrs. Vernon E. West, Corp. Counsel at the time the record was filed, Chester H. Gray, Principal Asst. Corp. Counsel at the time the record was filed, Milton D. Korman and Ralph D. Quinter, Jr., Asst. Corp. Counsel, were on the brief, for appellant.

Mr. James C. Toomey, Washington, D. C., with whom Mr. Walter E. Gillcrest, Washington, D. C., was on the brief, for appellee.

Mr. Oliver Gasch, U. S. Atty., filed a brief on behalf of the United States, as amicus curiae, urging affirmance. Messrs. Lewis Carroll and Nathan J. Paulson, Asst. U. S. Attys., were also on the brief.

Before WASHINGTON, BASTIAN and BURGER, Circuit Judges.

BURGER, Circuit Judge.

The District of Columbia is appealing from the district court's finding that ap-pellee was a resident of the District of Columbia, within the meaning of § 21–317, D.C.Code 1951. This statute provides:

"If an insane person be found by the commission, subject to the review of the court, not to be a resident of the District of Columbia, he may be committed by the court to Saint Elizabeths Hospital as a District of Columbia patient until such time as his residence shall have been ascertained. Upon the ascertainment of such insane person's residence in some other jurisdiction, he shall be transferred to the state of such residence. The expense of transferring such patient, including the traveling expenses of necessary attendants to insure his safe transfer, shall be borne by the District of Columbia only if the patient be indigent.

"Any insane person found by the commission to have been a resident of the District of Columbia for more than one year prior to the filing of the petition, and any person found within the District of Columbia whose residence can not be ascertained, who is not in confinement on a criminal charge, may be committed by the court to, and confined in, said Saint Elizabeths Hospital, or any other hospital in said District, which, in the judgment of the commission of said District, is properly constructed and equipped for the reception and care of such persons, and the official in charge of which, for the time being, is willing to receive such persons.

" '*Resident of the District of Columbia,*' *as used in this section, means a person who has maintained his principal place of abode in the District of Columbia for more than one year prior to the filing of the petition provided for in section 21–310.* * * *" (Emphasis added.)

The record discloses that, on December 24, 1953, appellee was apprehended in her mother's home in Washington, D. C.,

where the latter resides, and was detained at District of Columbia General Hospital pending a mental health hearing. The earlier history of appellee and her family may be summarized as follows: Appellee was born in 1921 at Fortress Monroe, Virginia, where her father was stationed as an army officer. In 1922, after the father's death in military service, appellee's mother moved to Washington, D. C., where she remained for some years until remarriage, following which the mother lived for short periods in Texas and California and was divorced in San Francisco, California, in 1945. The mother, whose occupation as a writer necessitated a good deal of traveling, apparently returned to Washington periodically up until 1947.

Appellee did not leave the District of Columbia when her mother remarried but remained here as a student until graduation from high school in 1939. In 1940 she went to the University of Pennsylvania for about a year and then to the University of California from which she graduated in 1945.[1] Following graduation she returned to Washington and then went to New York to work on her graduate thesis. In the course of work on her thesis in 1946, appellee suffered her first mental breakdown. From 1946 to 1953 she suffered a series of breakdowns, was in and out of mental hospitals and often lived in places not known by her mother and not disclosed by the record. There is no evidence of her having any fixed abode at any place where

she attended college or was treated for mental illness.

Meanwhile appellee's mother returned to Washington in 1951 and has since maintained a home here. It was to her mother's home that appellee had come shortly before she was apprehended in December, 1953, having previously been in a sanatorium in nearby Maryland.

On February 3, 1954, after a mental health hearing, a Decree of Adjudication and Commitment was entered,[2] stating that appellee was of unsound mind, was *not* a resident of the District of Columbia, and that she should be committed to St. Elizabeths Hospital until she could be returned to the state of her residence. Appellee was represented by counsel at this hearing, but it is of some significance that the order appointing counsel was dated as of the same day the hearing was held and it appears that little, if any, testimony was given with respect to appellee's residence; appellee's mother was not called to testify.

About October, 1954, appellee's mother, while on an assignment in Europe, learned that St. Elizabeths Hospital intended to transfer her daughter to the State of California on the ground that California was her state of residence. Appellee's mother immediately returned to the District of Columbia, obtained counsel and on October 15, 1954 a motion was filed, on the basis of the mother's affidavit, to amend Findings of Fact of Decree of Adjudication and Commit-

1. During her college years appellee spent her summer vacations in Washington, D. C., at the family home on Columbia Road, and in Philadelphia, Pennsylvania, at her grandfather's home.

2. This decree provided:
"This matter coming on to be heard by the Court and a jury, and the jury having found *Dorothy K. Stackhouse* patient, to be of unsound mind; and considering the report and recommendations of the Commission on Mental Health, who, after examination and hearing found the respondent to be of unsound mind and in need of treatment in a hospital for her mental condition, it is by the

Court, this *3rd* day of *February, 1954.* Adjudged And Decreed:
"1. That Dorothy K. Stackhouse is of unsound mind and is hereby committed to Saint Elizabeths Hospital, until she may be returned to the State of her residence.
"2. That Dorothy K. Stackhouse is not a resident of the District of Columbia.
"3. That the expense of the maintenance and treatment of Dorothy K. Stackhouse in Saint Elizabeths Hospital shall be borne in accordance with the provisions of Public Law 724, 80th Congress (District of Columbia Appropriation Act 1949, approved June 19, 1948 [62 Stat. 537])."

ment, for a temporary restraining order and a preliminary and permanent injunction. The temporary restraining order was granted on the same day, restraining appellee's transfer to California, and a preliminary injunction was granted on November 2, 1954, when the District Court found "there are reasonable grounds to believe that the said patient may be a resident of the District of Columbia within the meaning of Title 21, Section 317 of the Code of Laws (1951 Ed.), which will necessitate a further hearing in order to determine whether or not the same is a fact."

Appellee's mother filed a further affidavit and subsequently, on March 3, 1955, the district court, after full hearing, made detailed findings that appellee became a resident of the District of Columbia in 1922, completed grammar school and high school here and attained majority in 1942 while still a resident of the District of Columbia; that she did not abandon her District of Columbia residence, that at no time did she establish a residence elsewhere and that on February 3, 1954, when she was committed, she was a resident of the District of Columbia within the meaning of § 21–317, D.C.Code 1951. Paragraph 2 of the Findings of Fact of Decree of Adjudication and Commitment of February 3, 1954 [3] was amended in accordance with this finding, and it is from the order amending this paragraph that the District of Columbia appeals.

■ At oral argument the District of Columbia raised the point that the motion to amend the Findings of Fact of Decree of Adjudication and Commitment was made eight months after entry of the order, whereas Fed.R.Civ.P. 52(b), provides that such motions must be made not later than 10 days after entry of judgment. We need not decide whether the court could entertain a motion to amend its findings after ten days from entry thereof,[4] because the court could, under Fed.R.Civ.P. 60(b) (6), relieve appellee from that part of the judgment ruling that she was not a resident of the District of Columbia. On the basis of this record we believe the court acted well within its discretion.

The issue of residence in the sense involved in the pertinent statute is one of mixed law and fact, but essentially rests on the facts of appellee's childhood, schooling, family residence and activities generally. We have reviewed carefully a record which discloses an unusual course of family life, disrupted in appellee's infancy by the death of her father, followed by a prolonged attendance at boarding school in the District of Columbia thereafter, including a period subsequent to her mother's remarriage and removal to Texas. Appellee's absences from the District of Columbia up to 1946 were for the purpose of attending college and thereafter for protracted mental illness treatment.

■ The fact that appellee lived in a college town as a student, during which time she returned home for summer vacations and never, so far as the record shows, indicated an intention to make her residence in the college town, should not result in the loss of her District of Columbia residence.[5] Nor should appellee's subsequent confinement in the numerous mental institutions effect a change in her residence. Carroll v. United States, 2 Cir., 1943, 133 F.2d 690, 693; cf. Chew v. Nicholson, D.C.D.Del.1922, 281 F. 400. Although residence implies a less permanent attachment than domicile, we cannot say that appellant has sustained the burden of proving that any of appellee's sojourns outside of the District of Columbia were such as to make her a resident of the various locales she

---

3. Footnote 2, supra.

4. Cf. Hayes v. Kelley, 9 Cir., 1940, 112 F.2d 897; Vennell v. United States, D.C. E.D.Pa., 38 F.Supp. 381, affirmed 3 Cir., 1941, 122 F.2d 936.

5. Bell v. Milsak, D.C.W.D.La.1952, 106 F.Supp. 219; Anderson v. Pifer, 1924, 315 Ill. 164, 146 N.E. 171, 173, 37 A.L.R. 134.

visited, or cause her to lose her District of Columbia residence.[6]

 In defining a "resident" as one who has maintained his "principal place of abode" in the District of Columbia, Congress, taking notice of the known high percentage of "transients" who stay here for relatively brief periods, apparently intended to prevent the commitment to St. Elizabeths of persons who had no permanent attachment to the District of Columbia. After examining the account of appellee's wanderings, we must conclude that from early childhood she did have a permanent attachment to Washington, D. C. and that Washington, rather than the mental institutions in which she stayed, was her principal place of abode during the year prior to her commitment to St. Elizabeths. We do not believe the phrase "principal place of abode", without more, requires physical presence. Cf. Baldwin v. Tiffany, 1929, 250 N.Y. 489, 166 N.E. 177.

The District of Columbia indicated it was most concerned on this appeal with the question of whether funds appropriated to the District of Columbia may be expended for appellee's maintenance under § 32–401a, D.C.Code 1951.[7] However, we do not reach this question because the district court ruled only that appellee was a resident of the District of Columbia according to the definition of the term "resident" contained in § 21–317, D.C.Code 1951. Furthermore, paragraph 3 of the original Decree of Adjudication and Commitment of February 3, 1954 provided that "the expense of the maintenance and treatment of Dorothy K. Stackhouse in Saint Elizabeths Hospital shall be borne in accordance with the provisions of Public Law 724, 80th Congress (District of Columbia Appropriation Act 1949, approved June 19, 1948).";[8] this paragraph was not changed by the amending order of March 3, 1955.

The record shows that after the first finding of nonresidence the district court gave exhaustive consideration to the conflicting claims urged upon it, and on the whole record we hold that its decision was correct. The judgment of the district court is, therefore,

Affirmed.

---

**6.** Botna Val. State Bank v. Silver City Bank, 1893, 87 Iowa 479, 54 N.W. 472, 473; Rawstorne v. Maguire, 1934, 265 N.Y. 204, 192 N.E. 294; 296; Alburger v. Alburger, 1940, 138 Pa.Super. 339, 10 A.2d 888, 890.

**7.** This section provides:
"The funds of the District of Columbia shall not be available for the care of any person admitted hereafter to Saint Elizabeths Hospital who has not lived in the District of Columbia for more than one year immediately prior to application for voluntary admission or the filing of the petition provided for in the Act approved June 8, 1938, as amended: *Provided,* That nothing herein shall be construed to limit or otherwise modify any authority of Saint Elizabeths Hospital or its Superintendent pursuant to law to admit, receive, detain, or care for any individual."

**8.** § 32–401a, D.C.Code 1951.